[No. 6596.     Decided March 19, 1907.]

SAMUEL WRIGHT *et al.*, *Respondents*, v. C. A. BEARDSLEY *et al.*, *Appellants*.[1]

PARTIES—PLAINTIFFS—HUSBAND AND WIFE—TORTS. An action by a husband and wife for failure to properly bury the dead body of their child is not subject to the objection that there is a defect of parties plaintiff.

DAMAGES—MENTAL SUFFERING—TORTS—PLEADING. Damages may be recovered for mental suffering inflicted by the wrongful or improper burial of plaintiffs' dead child, under a complaint alleging breach of contract to make proper burial, where the facts stated show a tort or injury to the person.

[1]Reported in 89 Pac. 172.

DAMAGES—EXCESSIVE VERDICT—NEW TRIAL. A verdict for $2,510
for damages for the wrongful burial of plaintiffs' dead child is so
excessive as to show passion or prejudice, entitling the defendants
to a new trial, where it appears that the child was born at a hos-
pital and died five days later, that the defendants were informed
that the plaintiffs were poor and could not afford a costly funeral,
and would probably want to bury the body permanently at some
other place, and the body was buried in a lot used for stillborn in-
fants, on top of another coffin, about eight inches deep, and was not
molested in any way, until pointed out to and removed by the plain-
tiffs to another lot in the same cemetery.

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered June 25, 1906, upon the
verdict of a jury rendered in favor of the plaintiffs, in an
action for damages. Reversed.

*John C. Hogan* and *W. I. Agnew*, for appellants.
*Boner & Boner* and *Ben Sheeks*, for respondents.

MOUNT, J.—The respondents brought this action to re-
cover damages against appellants for the improper burial of
a deceased child. They recovered a verdict and judgment
for $2,510. From this judgment the defendants appealed.

The complaint alleged, in substance, that the plaintiffs
were husband and wife; that the defendants were copartners
doing business as undertakers in the city of Aberdeen;
that on December 12, 1905, plaintiffs lost their infant child,
and contracted with defendants to bury the body in a decent,
respectable manner, according to the usual customs and
usage in performing burials; that in pursuance of the agree-
ment, defendants took the said body and deposited it in a
grave which was then used as the grave of another child, and
left the body in a rough coffin without a box and within six
inches of the surface of the ground, and on top of the coffin
of another child; that after said pretended burial, and with-
out knowledge of the manner of said burial, plaintiffs paid
defendants the charges therefor; that, by reason of the failure
of defendants to perform their duties under said contract,

plaintiffs have been damaged and have been caused to suffer great mental anguish, to their damage in the sum of $5,000. The prayer was for that amount. The defendants interposed a demurrer to this complaint, upon the grounds that there was a defect of parties plaintiff and defendant, and that the complaint fails to state facts sufficient to constitute a cause of action. This demurrer was overruled. Defendants then filed an answer, admitting that plaintiffs were husband and wife, that defendants were copartners in the undertaking business, and that they entered into an agreement to bury plaintiffs' deceased child, but denied all the other allegations of the complaint. As a separate defense, the defendants alleged that they agreed with the plaintiffs to furnish a certain coffin and bury the body of the infant cheaply and temporarily in a lot used for the burial of stillborn infants, and that defendants fully and completely performed the said agreement, and that thereafter the body of said infant was exhumed by plaintiffs, in the presence of one of the defendants, and at said time, with full knowledge of the manner of said burial, the plaintiffs expressed complete satisfaction, and the body was thereupon re-interred in the same grave. At the close of plaintiffs' evidence, the defendants moved for a directed verdict upon the ground that the evidence was insufficient to sustain a judgment. This motion was denied by the court. Thereafter the court instructed the jury to the effect that if the jury found for the plaintiffs, they might award plaintiffs actual damages for mental suffering. After verdict the defendants moved for a new trial upon the statutory grounds. This motion was also denied.

It is first contended by appellants that there is a defect of parties plaintiff, but in view of the allegations in the complaint and the admissions in the answer, that the plaintiffs are husband and wife and that the defendants are copartners, there seems to be no merit in this contention. The persons who are the lawful custodians of a deceased body may maintain an action for its desecration. *Dunn & Co. v. Smith*

(*Tex. Civ. App.*), 74 S. W. 576; *Koerber v. Patek*, 123 Wis. 453, 102 N. W. 40. The mother and father certainly may join in such an action.

The questions whether the complaint states a cause of action, whether the evidence was sufficient to go to the jury, and whether the court erred in instructing the jury that damages might be given for mental anguish of the plaintiffs, are all based upon the same contention, viz., that the action is for damages for a breach of contract, and that mental anguish is not a proper element of damage in such cases. These questions may therefore all be considered together. While it is true that the complaint alleges that a contract was entered into and that by reason of the failure of defendants to perform their duty under the contract plaintiffs have been damaged, etc., still the facts stated in the complaint, and testified to by the plaintiffs, show that the action is for a wrong against the feelings of the plaintiffs inflicted by a wrongful and improper burial of their dead; in other words, a tort or injury against the person. In cases of this character, the rule has frequently been applied that damages may be had for mental suffering. *Dunn v. Smith*, and *Koerber v. Patek, supra; Larson v. Chase*, 47 Minn. 307, 50 N. W. 238, 28 Am. St. 370, 14 L. R. A. 85; *Burney v. Children's Hospital*, 169 Mass. 57, 47 N. E. 401, 61 Am. St. 273, 38 L. R. A. 413; *Foley v. Phelps*, 1 App. Div. 551, 37 N. Y. Supp. 471.

In the case of *Koerber v. Patek, supra*, the court said:

"Doubtless other illustrations might be suggested, but these suffice to satisfy us that there is neither solecism nor unreason in the view that the right of custody of the corpse of a near relative for the purpose of paying the last rites of respect and regard is one of those relative rights recognized by the law as springing from the domestic relation, and that a wilful or wrongful invasion of that right is one of those *torts* for which damages for injury to feelings are recoverable as an independent element."

In the case of *Larson v. Chase, supra,* the court said:

"Wherever the act complained of constitutes a violation of some legal right of the plaintiff, which always, in contemplation of the law, causes injury, he is entitled to recover all damages which are the proximate and natural consequence of the wrongful act. That mental suffering and injury to the feelings would be ordinarily the natural and proximate result of knowledge that the remains of a deceased husband had been mutilated is too plain to admit of argument."

It is true that the cases above quoted from are cases where the deceased body had been wrongfully mutilated, but the principle there discussed applies as well to a case such as the one at bar where the wrong consists of the manner of burial. *Dunn v. Smith, supra.* Where one person agrees to give a dead body decent burial, and under such agreement obtains possession of the body and in violation of his duty casts the body by the way, or wrongfully mutilates it, or disposes of it, or deposits it in a grave without covering, in such a manner as to cause the relatives or persons charged with its decent sepulture to naturally suffer mental anguish, it would shock the sensibilities to hold that there was no remedy for such a wrong. We are, therefore, of the opinion that the trial court did not commit error in overruling the demurrer, or in denying defendants' motion for a nonsuit, or in instructing the jury that plaintiffs were entitled to recover actual damages for injury to the feelings.

Appellants next contend that the court erred in refusing the motion for new trial. This motion was based upon several grounds which, in all probability, will not arise upon a new trial, and which we shall not therefore discuss. We are clear that this motion should have been sustained, upon the ground that the verdict was excessive, so much so as to show passion and prejudice on the part of the jury. The facts, as stated by the respondents and which we assume are true for the purposes of this appeal, are in substance as follows: On December 7, 1905, the respondent Mrs. Wright gave birth to a child at a hospital in the city of Aberdeen. The child died

five days later.   Respondents thereupon sent for the appellants to bury the body.   When the representative of the appellants called at the hospital, he was informed that Mr. Wright was a poor man and could not afford a costly funeral. Mr. Wright also stated that his wife would probably want to bury the body permanently at some other place.   One of the appellants thereupon took the body of the child and carried it to his undertaking room and placed it in a small coffin, and the next day buried the child in a lot used for the burial of stillborn infants.   No one attended the funeral except the undertaker.   The father knew when the burial was to take place.   On the day following the burial, Mr. Wright called upon the appellants to pay the bill.   He was informed that the bill amounted to $8.50.   He gave the appellants $10, saying: "No man can bury a child decently for $8.50,"

Thereafter on May 6, 1905, the parents desired to remove the body of the child, and went to the office of appellants and informed Mr. C. A. Beardsley that they desired to see the grave.   Mr. Beardsley was not well on that day and could not go to the cemetery with respondents, but directed them how they could find the grave.   Respondents went to the cemetery, but were unable to locate the grave.   They thereupon returned to Mr. Beardsley and told him that they could not find the grave, that they would be back the next Wednesday, and that if he did not then show them where the grave was an officer would be called.   They returned on the next Tuesday, and requested Mr. Beardsley to accompany them to the cemetery.   Mr. Beardsley agreed to go, but requested respondents to furnish a conveyance.   Respondents refused to do this, but proceeded to walk to the cemetery, the distance being about one and a half miles.   Mr. Beardsley immediately thereafter obtained a conveyance and arrived at the cemetery a short time ahead of respondents.   He showed them the grave.   Mr. Wright thereupon proceeded to exhume the body.   He found the coffin buried only about eight inches below the surface of the ground, without any

box, and on the top of another coffin about the same size as the coffin his child was buried in. After the body was taken up and identified, it was replaced in the same grave by Mr. Wright and Mr. Beardsley, and re-covered. On the next day it was again taken up and reburied in the same cemetery by another undertaker.

The evidence showed that Mrs. Wright wept bitterly both at the time of her first visit to the cemetery when she was unable to find the grave, and at the time when the body was exhumed. She testified that her grief was caused by reason of the shallow depth the body was buried, and because the coffin was not placed in a box. There is no evidence that the body had been molested or mutilated in any way. Under these facts, we are satisfied that a verdict for $2,510 is entirely out of proportion to the actual injury sustained. It is somewhere between five and ten times more than it ought to be, and indicates that the jury, for some reason—no doubt in part by the mother's tears, were induced by passion or prejudice to render a verdict in the nature of punitive damages against the appellants.

The judgment is therefore reversed, and the cause remanded for a new trial.

HADLEY, C. J., CROW, ROOT, DUNBAR, and FULLERTON, JJ., concur.