[No. 18968. Department One. February 24, 1925.]

MARY GADBURY, *Appellant*, v. J. J. BLEITZ, *doing busi-
ness as Bleitz Undertaking and Cremation
Company, Respondent.*[1]

DAMAGES (17)—MENTAL SUFFERING. Damages may be recovered
for mental suffering unaccompanied by physical violence where it
was the result of a wilful wrong.

DEAD BODIES (4)—TORTS—DAMAGES. An undertaker's withhold-
ing a corpse from burial for the purpose of enforcing payment of a
previous indebtedness due from a third person is actionable as a
wilful wrong; especially in view of Rem. Comp. Stat., § 2492, making
such detention of a dead body a misdemeanor.

HUSBAND AND WIFE (87)—TORTS—PERSONAL INJURIES TO WIFE—
PARTIES. Where a married woman had been deserted by her hus-
band for two years, since which time she had heard nothing from
him, she may alone prosecute an action for damages for mental
suffering in connection with the wrongful detention of the dead
body of her son, whose funeral expenses she had arranged for and
paid, notwithstanding the son was of age.

PRINCIPAL AND AGENT (9)—AUTHORITY OF AGENT—EVIDENCE—SUF-
FICIENCY. The authority of an undertaker's son to represent him, in
announcing a wrongful detention of a corpse, is sufficiently shown
by evidence that he worked at the parlors as his assistant, cor-
roborated by the father's statements when he finally agreed to a
disposal of the body.

Appeal from a judgment of the superior court for
King county, Chapman, J., entered June 14, 1924, upon
granting a non-suit, dismissing an action in tort.
Reversed.

*Wright, Froude, Allen & Hilen* and *Egan & Mori-
arity,* for appellant.

*Byers & Byers,* for respondent.

ASKREN, J.—This is an action for personal injuries
alleged to have been sustained by plaintiff in January,

[1]Reported in 233 Pac. 299.

1922. The cause was tried to a jury, and at the close of plaintiff's case, an order of dismissal was entered by the trial court. The facts, as shown by the plaintiff's witnesses, are substantially as follows:

The plaintiff is the mother of one Theodore Gadbury, who died on December 20, 1922. The plaintiff engaged the defendant, who is in the undertaking business, to conduct the funeral and cremate the body. The funeral was held on December 24 at the funeral parlors of the defendant, and the charge therefor, to wit, $170, was afterwards paid. Approximately fifteen months prior to this time, the plaintiff's son-in-law, one Ed Shifty, died while on a visit to the plaintiff's home, and the defendant had charge of the funeral, the agreement with respect to the funeral and the charge therefor being made by the plaintiff's daughter, the wife of the deceased, Shifty. Approximately two weeks after the funeral of Theodore Gadbury, and after the fee therefor had been paid in full by plaintiff, James Bleitz, son of the defendant, came to plaintiff's home and told her that his father had sent him to collect for the Shifty account, and upon being told that the plaintiff did not consider she was responsible for the account, he notified her that they were holding the body of her son, and that they would continue to hold it until the bill was paid. The plaintiff at that time thought her son's body had already been cremated, and had just begun to recover from the grief occasioned by the loss. Upon receiving this information, her condition became so aggravated that she became sick and lost some ten or fifteen pounds in weight, and the shock materially affected her health. Word was sent to another son, who, in company with other relatives, went to the parlors of the defendant and there questioned defendant about the matter, and he then stated that he was holding the body for the payment of the Shifty account,

and that it was his intention to hold it until the account was paid. After some conversation the defendant finally agreed to cremate the body, which was thereafter done.

Upon this state of facts, the court held that there was not sufficient evidence to take the case to the jury. The decision was based upon the ground that damages are not recoverable for mental suffering unaccompanied by physical violence, occasioned by the negligence of another. That this is the rule in this state cannot be doubted. We have so held in *Corcoran v. Postal Telegraph Cable Co.*, 80 Wash. 570, 142 Pac. 29, L. R. A. 1915B 522, and *Kneass v. Cremation Society of Washington*, 103 Wash. 521, 175 Pac. 172, 10 A. L. R. 442. However, we have adopted the rule that if such suffering is the direct result of a wilful wrong as distinguished from one that is merely negligent, then there may be a recovery. *Wright v. Beardsley*, 46 Wash. 16, 89 Pac. 172. This is a well established exception recognized by modern text writers. 17 Corpus Juris 831, lays down the rule as follows:

"The general rule supported by the weight of authority is that mental pain and suffering will not alone constitute a sufficient basis for the recovery of substantial damages. Certain exceptions to this rule are recognized in actions for breach of contract of marriage and certain cases of wilful wrong, especially those affecting the liberty of personal security, character or reputation, or domestic relations of the injured person, in which cases mental suffering is recognized as the ordinary, natural, and proximate consequence of the wrong complained of."

8 Ruling Case Law 531, states it in this manner:

"In cases of wilful and wanton wrongs and those committed with malice and an intention to cause mental distress, damages are, as a general rule, recoverable for mental suffering even without bodily injury, and

though no pecuniary damage is alleged or proved. And in general, damages for mental anguish or suffering are recoverable where the act complained of was done with such gross carelessness or recklessness as to show an utter indifference to the consequence when they must have been in the actor's mind, . . . ."

It is unnecessary to state all the reasons for the rule, or to attempt to draw a distinction between the many cases cited in the briefs, for an examination of them will show that in nearly every one where recovery was denied it has been upon the ground that the act of the defendant was simply negligent, and was not an act done with the wilful intent to cause the plaintiff to suffer. It must be apparent that the facts in this case bring it within the exception, and that the act complained of was a wilful wrong. It requires no argument to demonstrate that, under the evidence, the failure to cremate the body was not a mere delay caused by negligence. The testimony shows that the body was kept long after the time agreed upon for its cremation, and it is apparent that it was held for the express purpose of compelling payment of the Shifty bill. This was a wilful wrong.

It is argued by respondent that the principle announced in *Wright v. Beardsley, supra,* is based upon those cases where the body of the deceased has been mutilated or buried in the wrong grave, or has been cast by the way, and that the evidence here shows nothing further was done with the body than to retain it in what is known as the "slumber room." But we think that the holding of the body after the time for its cremation has passed, and claiming to hold it as a guarantee or as security for the payment of some indebtedness, is making a misuse of the body, just the same as its mutilation or improper burial. The misuse in one case may be greater in degree, but nevertheless

it is a misuse. The right of the mother to have the son timely cremated according to the agreement ought not to be denied, and the extent or degree of the misuse ought not to prevent recovery. It may well be said that it is hard to conceive of more refined cruelty and wilful wrong than that which the evidence shows was practiced in this case. It is doubtful if any threat could be more calculated not only to compel payment of the debt, but also to produce mental anguish and suffering, and it was thought that, by first creating the suffering, payment would follow to put an end to the mental torture. In this connection it might be well to notice that the legislature has seen fit to make the detention of the dead body of a human being punishable as a misdemeanor.

"Every person who shall arrest or attach the dead body of a human being upon a debt or demand, or shall detain or claim to detain it for any debt or demand, or upon any pretended lien or charge; or who, without authority of law, shall obstruct or detain a person engaged in carrying or accompanying the dead body of a human being to a place of burial or cremation shall be guilty of a misdemeanor." Rem. Comp. Stat., § 2492 [P. C. § 8779].

At the time of granting the dismissal, respondent also urged a want of capacity of the plaintiff to maintain the action. The evidence showed that the appellant's husband had left her more than two years prior to the bringing of the action, and that she had not heard from him during that time. It also showed that she was the one who had made the arrangements for the funeral and had paid the debt. We think there was sufficient showing to enable the wife to maintain the action without joining the husband, under the authority of *Marston v. Rue*, 92 Wash. 129, 159 Pac. 111, and *Wampler v. Beinert*, 125 Wash. 494, 216 Pac. 865. It is also urged that, since the appellant's son was of age,

therefore no duty devolved upon the mother, and that she could not bring the action; but it has been held in many cases that those persons who by relationship have a peculiar interest in seeing that the last sad rites are properly given the deceased may maintain the action. In *Koerber v. Patek,* 123 Wis. 453, 102 N. W. 40, 68 L. R. A. 956, this question is completely answered as follows:

"There is neither solecism nor unreason in the view that the right of custody of the corpse of a near relative for the purpose of paying the last rites of respect and regard is one of those relative rights recognized by the law as springing from the domestic relation, and that a wilful or wrongful invasion of that right is one of those torts for which damages for injury to feelings are recoverable as an independent element."

Some contention is made by respondent that there was no evidence showing authority in James Bleitz to make the statements upon behalf of his father; but there was a showing to the effect that he worked at the parlors for his father; that he attended the funerals; acted as assistant; and the further testimony as to what the father said when the younger Gadbury came to his place of business furnishes corroborative evidence that the son acted for the father.

We think the facts shown by appellant's evidence make this a case of wilful wrong, and that the mother is the proper party to bring the suit. The judgment is therefore reversed and the trial court is directed to grant a new trial.

TOLMAN, C. J., MAIN, BRIDGES, and PARKER, JJ., concur.