[No. 25432. *En Banc.* August 1, 1935.]

WILLARD A. FRAZEE *et al., Respondents,* v. WESTERN DAIRY PRODUCTS *et al., Appellants.*[1]

[1]Reported in 47 P. (2d) 1037.

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellants.

*Rummens & Griffin* and *W. Lawrence Dafoe,* for respondents.

BEALS, J.—Plaintiffs, Willard A. and Esther Frazee, husband and wife, were the parents of five children, and during the month of July, 1934, resided at 1518 east Jefferson street, Seattle. On the morning of July 24th, Mrs. Frazee, who was then three months pregnant, was sitting in her living room by a window which afforded her a view eastward along east Jefferson street toward Providence hospital, in which direction the street rose at a grade of from seven to nine per cent.

Defendant Western Dairy Products was the owner of an automobile truck, twenty-two feet long and weighing five tons, used for the delivery of its products. Defendant Lewis R. Carson was the driver in charge of the truck, and on the morning of July 24th was delivering ice cream, the truck then carrying a load of about one ton.

Mr. Carson parked the truck in front of a store building at the southwest corner of east Jefferson street and Seventeenth avenue, applying the brakes, as he testified, and leaving the motor running. Shortly thereafter, the truck ran wild, backing down the hill toward the west. A short distance east of Sixteenth avenue, the truck collided with the right rear corner of a street car, which was proceeding easterly along east Jefferson street. The truck then continued its course down east Jefferson street, until it ran over the curb near the corner of the lot upon which was located the dwelling occupied by plaintiffs. At this point, the truck crossed the sidewalk and ran up the bank in front of plaintiffs' house at an angle, whereupon it rolled over on its side toward the street.

Mrs. Frazee, from the window in her living room, saw the truck coming down the hill backwards and following an irregular course. She saw the collision with the street car, and then realized that the truck was a runaway. At about this time, she saw her young son, then three and one-half years old, starting up the steps leading to their home from the street. Mrs. Frazee was greatly alarmed at the possibility of injury to her child and called to Harry Williams, who was a boarder in the Frazee home, and who at the moment in question was in the kitchen, saying: "Harry, run get Franklin; get him quick."

Fortunately, the runaway truck struck no one. Mrs. Frazee testified that the truck crossed the steps leading up to her front yard, and ran up the bank at an angle, the rear wheels coming up clear over the bank before the truck turned over. She further testified that she was greatly alarmed by the apparent danger inherent in the situation and feared that the truck would strike or come near to the house, and that possibly it would burst into flames and set her home on fire; that she experienced such a fright that for a while she was absolutely unable to move, and that the resulting shock to her nervous system was very great. Mr. Frazee, who was in the employ of the municipal street railway, working on the night shift, was at the time of the occurrence upstairs asleep, and Mrs. Frazee stated that, as soon as she could move, she, in great excitement, hurried upstairs to her husband, who tried to quiet her.

In this connection, it should be noted that the court instructed the jury as follows:

"Under the law a person is not allowed to recover against another on account of fright or fear of injury to some person other than the plaintiff herself.

"I, therefore, instruct you that, if you believe from the evidence in this case that Mrs. Frazee's miscar-

riage and subsequent disability was due to fright or fear she suffered for the safety of her little boy, your verdict should be for the defendant;''

which instruction became the law of the case.

Mrs. Frazee testified that she felt extremely nervous all the balance of the day and suffered from a severe headache. She went to bed early, thinking that she would be refreshed by a good sleep. She, however, continued to suffer and called the family physician, who saw her early on the second morning after the occurrence. On the following Friday, her physician took her to the hospital, where she remained two weeks. At some time after the incident, Mrs. Frazee suffered a miscarriage, and later other complications set in, from which at the trial she testified she was still suffering.

Plaintiffs sued defendants for damages, alleging that the truck which ran away was parked in violation of a city ordinance which required that parked vehicles should stand with a wheel turned against the curb and that motor cars should not be left unattended with the motor running and the brakes not effectually set. Plaintiffs then alleged the running away of the truck, Mrs. Frazee's observation thereof and her fear that it would kill her son and crash into her house and set fire thereto; and that, as a result of her fright, she suffered a miscarriage and a permanent impairment of her nervous system, to plaintiffs' damage, both special and general, in a large sum.

Defendants admitted the parking of the truck, and that it ran away and turned over in front of plaintiffs' residence, but denied all the other allegations of plaintiffs' complaint. Trial of the action to a jury resulted in a verdict in plaintiffs' favor in the sum of $7,250, and from a judgment entered upon this verdict, defendants have appealed.

Error is assigned upon the denial of appellants' challenge to the sufficiency of the evidence entered at the close of plaintiffs' case, upon the denial of appellants' motion for a directed verdict, and upon the denial of their motion for judgment notwithstanding the verdict and their alternative motion for a new trial; also upon the entry of judgment in respondents' favor and on the refusal of the trial court to enter judgment in appellants' favor. Appellants also assign error upon the giving of four instructions and upon the refusal of the trial court to give one of their requested instructions.

In support of the first group of their assignments of error, appellants argue that negligence is not actionable unless it involves the violation of a right of the party claiming damages, and that an action for mere negligence cannot be predicated upon fright, unless there was some impact or direct physical invasion of the person. Appellants concede that, under the testimony, it was for the jury to determine whether or not appellants complied with the city ordinance in regard to the parking of the truck; but contend that it should be held, as matter of law, that no evidence was introduced supporting a verdict that appellants had committed any offense against the personal security of Mrs. Frazee.

It is, of course, admitted that Mrs. Frazee was in her own home, a distance of approximately thirty feet back from the margin of the street, the lot level being about four feet above that of the street. The truck ran over the curb, across the sidewalk, and up the bank until its right wheels reached nearly to the crest when the truck turned over, then resting upon the bank and the parking strip below. Appellants vigorously contend that the evidence fails to show any negligence on their part toward respondents, and cite the case of

*Palsgraf v. Long Island R. Co.*, 248 N. Y. 337, 162 N. E. 99, 59 A. L. R. 1253, decided by the court of appeals of New York.

In the case cited, it appeared that the plaintiff was standing upon a railroad platform owned by the defendant. She had purchased her ticket and was waiting to board one of its trains. Meanwhile, another train, having stopped, started to move forward. Two men, desiring to board, ran after it. One man boarded without difficulty, while the other, carrying a package, jumped on the steps, but swayed as though about to fall. A guard on the car reached forward to assist the passenger, while another operative on the platform attempted to push him up the steps. As the result of these well meant efforts, the package carried by the passenger slipped from his hands and fell on the platform. This package contained fireworks, which exploded upon impact. The shock of the explosion threw down some scales at the other end of the platform, which in falling, struck and injured plaintiff. The court, by a four to three decision, reversed a judgment in favor of the plaintiff and directed the dismissal of her complaint. The majority opinion contains the following language:

"The conduct of the defendant's guard, if a wrong in its relation to the holder of the package, was not a wrong in its relation to the plaintiff, standing far away. Relatively to her it was not negligence at all. Nothing in the situation gave notice that the falling package had in it the potency of peril to persons thus removed. Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. 'Proof of negligence in the air, so to speak, will not do.' . . . The plaintiff, as she stood upon the platform of the station, might claim to be protected against intentional invasion of her bodily security. Such invasion is not charged. She might claim to be protected against unintentional invasion by con-

duct involving in the thought of reasonable men an unreasonable hazard that such invasion would ensue. These, from the point of view of the law, were the bounds of her immunity, with perhaps some rare exceptions, survivals for the most part of ancient forms of liability, where conduct is held to be at the peril of the actor. . . . If no hazard was apparent to the eye of ordinary vigilance, an act innocent and harmless, at least to outward seeming, with reference to her, did not take to itself the quality of a tort because it happened to be a wrong, though apparently not one involving the risk of bodily insecurity, with reference to some one else. 'In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have averted or avoided the injury.' . . .

"Negligence is not a tort unless it results in the commission of a wrong, and the commission of a wrong imports the violation of a right, in this case, we are told, the right to be protected against interference with one's bodily security. But bodily security is protected, not against all forms of interference or aggression, but only against some. One who seeks redress at law does not make out a cause of action by showing without more that there has been damage to his person. If the harm was not willful, he must show that the act as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it though the harm was unintended."

The majority assume, without deciding,

" . . . that negligence, not at large or in the abstract, but in relation to the plaintiff, would entail liability for any and all consequences, however novel or extraordinary."

The facts in the case cited are not parallel to those disclosed by the record in the case at bar. It might well be held that it would not occur to the agents of the railroad company that the package carried by the man anxious to board the train might contain explo-

sives, and that it might fall and explode; while in the case at bar, it is matter of common knowledge that the law of gravitation will operate to cause an unbraked wheeled vehicle to run down hill, and that a heavy automobile so running wild is an extremely dangerous agency. This danger is so well recognized that, as proven in the case at bar, the matter has been the subject of legislation by the council of the city of Seattle. In the language of the majority of the New York court of appeals, above quoted, Mrs. Frazee

". . . might claim to be protected against unintentional invasion by conduct involving in the thought of reasonable men an unreasonable hazard that such invasion would ensue."

The grade of the street was obvious. Defendant Carson, the driver of the truck, knew its weight and knew, of course, that it would run down hill if the force of gravity were allowed to operate upon it. While Mr. Carson knew nothing of Mrs. Frazee, he knew that there were people on and about the streets, and it must be held that he knew the city ordinance and knew the danger which might ensue from disregard of its provisions.

Appellants also cite the case of *Flynn v. Gordon*, 86 N. H. 198, 165 Atl. 715, in which the supreme court of New Hampshire, citing the case of *Palsgraf v. Long Island R. Co., supra,* held that:

"The actor is liable only for such harm as results from the other's exposure thereto. The orbit of danger includes both expectable persons and expectable risks. Both are of equal importance.

"In regard to persons, the law is extremely clear. Only persons whose presence within the zone of apprehended danger is expectable can complain of a failure to protect them against expectable risks. Failure to furnish protection is negligence only toward those to whom a duty of protection is owed."

The court quotes from the *Palsgraf* case: "The risk reasonably to be perceived defines the duty to be obeyed." Certainly, in the case at bar, it cannot be held that there was no risk reasonably to be perceived in leaving the heavy truck in such a situation that it could run wild down a seven to nine per cent grade.

In the cases last cited, the respective plaintiffs suffered some physical injury from contact, while, in the case at bar, Mrs. Frazee was not struck, but suffered merely from fright. Under our decisions, it would seem that, if Mrs. Frazee had been struck by the truck and injured, her right to submit her claim for damages to a jury would have been clear. The question here presented is quite different.

In the case of *Cherry v. General Petroleum Corporation,* 172 Wash. 688, 21 P. (2d) 520, this court held that a woman operating a hotel which was to some extent undermined by an excavation upon adjoining property, could not recover damages, on account of alleged injuries suffered by reason of excessive physical exertion due to moving furniture, as well as from worry caused by the apparent danger to her property. In the case cited, it did not appear that the plaintiff was herself ever in any danger from which she could not escape by simply departing from that portion of her hotel which appeared to have been undermined. She overexerted herself in moving personal property belonging to her and her guests and placing the same beyond the reach of danger. We held that she was not entitled to damages

". . . for any condition which may have resulted from her strenuous exertions in moving her furniture two or three hours after she first became aware of the danger to her property."

In the case last cited, this court quoted from the opinion of the supreme court of Pennsylvania in the

case of *Ewing v. Pittsburg etc. R. Co.*, 147 Pa. 40, 23 Atl. 340, 30 Am. St. 709, 14 L. R. A. 666, which case is relied on by appellants. The Pennsylvania court held that a woman was not entitled to any recovery based upon fright occasioned by the throwing of some of the defendant's railroad cars upon her property. The case last referred to supports appellants' position and was of interest in connection with the *Cherry* case, *supra*. The Pennsylvania rule, however, as adopted in the case referred to and other decisions, is, in our opinion, at variance with the rule laid down by this court in the case of *O'Meara v. Russell*, 90 Wash. 557, 156 Pac. 550, which we shall consider later.

In the case of *Ottevaere v. Spokane*, 89 Wash. 681, 155 Pac. 146, this court said:

"All of the cases agree that an injury which is the natural and probable consequence of an act of negligence is actionable, and that such an act is the proximate cause of the injury. It is equally well settled that an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and that such an act is either the remote cause, or no cause whatever, of the injury."

In the case at bar, it must be determined whether or not there is any distinction in law, in so far as the same affects the liability of one in appellants' situation, between damages resulting from a collision between a runaway truck and a person and damages resulting from fright caused by the runaway, under the circumstances shown by the record herein.

Appellants argue that, because all of Mrs. Frazee's alleged injuries resulted from fright, she cannot recover. In this connection, we are satisfied that the questions of fact presented were for the jury to determine; that is, whether the escape of the truck was due to negligence, whether Mrs. Frazee was fright-

ened, whether or not the fright resulted in her suffering a miscarriage, and whether she suffered other physical injuries for which she could recover damages. As to the basic proposition of law involved, whether or not fright, unaccompanied by a physical striking of the person, can be the basis for a recovery, appellants cite the following language from the opinion of this court in the case of *Cherry v. General Petroleum Corporation, supra:*

"Respondent, of course, suffered a severe mental shock because of the manifest danger to her property resulting from the land slip. She apparently, however, recognizes the rule of law to the effect that a mental shock resulting from mere negligence can not be made the basis of an action for damages unless there is some impact or direct physical invasion of the person or the injury results from some wilful or wanton act. *Ewing v. Pittsburgh, C. C. & St. L. Ry. Co., supra* [147 Pa. 40, 23 Atl. 340, 30 Am. St. 709, 14 L. R. A. 666]. Respondent in the case at bar therefore attempts to trace her nervous condition to the physical exertion which she was compelled, as she claims, to undergo by reason of the imminent danger to her property."

In this connection, appellants also cite the following from 8 R. C. L. 525:

"While fright or nervous shock may always be considered in awarding damages where there is a contemporaneous physical injury, some of the courts hold that no recovery can be had for bodily pain and suffering resulting from fright caused by a negligent act where the fright is not accompanied by such injury. In a most extreme case it has been held that this is the rule even if the negligence was gross and the party in fault ought to have known that the result would follow his act. The reasons generally given for so holding are that the physical injury caused by the fright is not the proximate result of the wrongful act, and that, so contending, the physical injury is too remote or of a character too metaphysical or difficult of proof. Another reason sometimes advanced in those jurisdictions

where there can be no recovery for fright is to the effect that, logically, there can be no recovery for the consequences thereof.''

They also rely upon the opinion of the court of appeals of New York in the case of *Mitchell v. Rochester R. Co.*, 151 N. Y. 107, 45 N. E. 354, 56 Am. St. 604, 34 L. R. A. 781, in which that court used the following language:

''Assuming that fright cannot form the basis of an action, it is obvious that no recovery can be had from injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle. These results merely show the degree of fright, or the extent of the damages. The right of action must still depend upon the question whether a recovery may be had for fright. If it can, then an action may be maintained, however slight the injury. If not, then there can be no recovery, no matter how grave or serious the consequences. Therefore the logical result of the respondent's concession would seem to be, not only that no recovery can be had for mere fright, but also that none can be had for injuries which are the direct consequences of it.''

We are, of course, not here concerned with damages resulting from fright occasioned by some willful act, however innocently intended. The truck was not deliberately started upon its mad career, and cases based upon any willful act are not here in point.

Appellants rely upon the case of *Kneass v. Cremation Society of Washington*, 103 Wash. 521, 175 Pac. 172, 10 A. L. R. 442, in which this court held that damages could not be recovered based on mental anguish suffered as the result of the negligent loss by the defendant of the ¡urn containing the ashes of an infant child of the plaintiff, which the defendant had agreed to keep until called for. The case cited was one in which the element of physical action resulting in fright

or a nervous tension induced by fear as a cause of the damage was entirely lacking. It was a case involving mental anguish or distress of mind as a result of negligence unaccompanied by physical injury, or by any menace of physical force whatsoever. The question here is: Did appellants' negligence result in violation of Mrs. Frazee's right to security in her person, family and home, and may appellants be required to respond in damages for injury occasioned by mental stress unaccompanied by any physical impact against Mrs. Frazee's person, or that of any member of her family?

In the case of *O'Meara v. Russell*, 90 Wash. 557, 156 Pac. 550, it appeared that the defendants, who were clearing a street under contract with the city of Seattle, were blasting stumps, and that, in the course of their operations, a stump was blown through the air a distance of approximately one hundred fifty feet, striking the side of Mrs. O'Meara's house near the point where she was standing at the time. She saw the stump coming through the air toward her, and saw it strike the house a few feet above her head. Mrs. O'Meara was so frightened by the occurrence that she had no recollection of what happened thereafter until she found herself at the home of a neighbor about four blocks distant. The evidence indicated that Mrs. O'Meara suffered internal injuries, either from the shock or strain in attempting to escape from the vicinity after the stump had struck the house.

From a judgment rendered on the verdict of the jury in plaintiff's favor, the defendants appealed, contending that there could be no recovery for fright resulting in personal injury where there was no impact or physical damage to the person preceding the fright. The stump which struck the house did not strike Mrs. O'Meara. This court recognized the fact that the

authorities were in hopeless conflict upon the question of whether or not there could be a recovery in such case. In the course of the opinion, this court said:

"It is true there was no physical impact of the stump against the person of Mrs. O'Meara. But it is manifest that if this stump had touched the person of Mrs. O'Meara in the slightest degree, then the appellants [respondent], under all the authorities, would be entitled to recover for all resulting injuries. The mere fact that it did not touch her seems not a sufficient reason for holding that the results which followed may not be recovered for. When Mrs. O'Meara heard the blast which hurled the stump in her direction, and when she saw the stump coming, she no doubt stated truthfully that she thought it would strike her. It did not strike her; but it struck the house a few feet above her head. That she was frightened, there can be no doubt. She clearly was justified in attempting to escape from the peril which then confronted her. And if in attempting to escape, even by leaving the house, or running up a hill, which she did, injuries were caused to her person thereby, it seems upon reason, as well as upon authority, that she would be entitled to recover for the injuries naturally resulting from that fright."

We are satisfied that the case at bar falls within the rule of the *O'Meara* case, rather than within that of the *Kneass* or *Cherry* cases. There is here involved a negligent act which released a dangerous physical agency, by which, under certain circumstances, a severe mental strain by way of fright would naturally be occasioned. Such a fright would almost necessarily follow a direct physical menace from the runaway truck. The degree of fright and the resulting effects therefrom might vary greatly according to the person affected and the circumstances, but the situation is entirely different from mental anguish occasioned by the loss of the ashes of a beloved child, or from nervous stress resulting from overexertion in moving furniture.

Appellants rely upon the rule of law referred to in the *Cherry* case, *supra,* to the effect that:

"A mental shock resulting from mere negligence can not be made the basis of an action for damages unless there is some impact or direct physical invasion of the person or the injury results from some willful or wanton act."

The *O'Meara* case was discussed in the *Cherry* case, and was distinguished as follows, the facts in the *O'Meara* case having constituted

". . . an immediate physical invasion of the plaintiff's personal security, which she could not avoid, an entirely different situation from that here presented. In the case cited, the shock to the plaintiff's nerves was practically simultaneous with the blast, the actions of the plaintiff (over-exertion in leaving the place of danger) were spontaneous and not the result of deliberation or conscious volition, and were natural reactions to the situation."

In the *Cherry case,* we distinguished the case of *Netusil v. Novak,* 120 Neb. 751, 235 N. W. 335, and 122 Neb. 749, 241 N. W. 531, in which a recovery was upheld in favor of a woman who had been frightened by a vicious dog. In discussing the Nebraska case, we said:

"The dog had previously bitten the plaintiff, who was afraid of the animal and who fainted immediately upon the dog manifesting an apparent intention to attack her a second time. In this case, also, the fright resulted at once upon the happening of the acts complained of, and amounted to an invasion of that personal security to the enjoyment of which everyone is entitled. The danger was apparent and real, the fright occurred immediately, and no opportunity for thought or deliberation was afforded."

The case at bar presents facts constituting, as in the *Cherry* case we said of the *O'Meara* case, "an immediate physical invasion of the plaintiff's personal se-

curity which she could not avoid," and respondents here were entitled to go to the jury under proper instructions.

We find no inconsistency in the opinions of this court above referred to, and no occasion exists for overruling or modifying any of them. In the *O'Meara* case, we held that "the injuries resulting from the fright were physical injuries." With that holding, we are in entire accord, and we are convinced that this case falls within the same classification, and that the evidence supports the finding of the jury that respondents suffered damage for which appellants were responsible.

Our conclusion on this phase of the case is supported by the opinion of the supreme court of Rhode Island in the case of *Simone v. Rhode Island Co.*, 28 R. I. 186, 66 Atl. 202, 9 L. R. A. (N. S.) 740, in which case many authorities are discussed, and a recovery allowed based upon a nervous disturbance suffered by a young woman as the result of a street car collision.

A discussion of the problem, with many citations, is found in 34 Harvard Law Review 260. In this connection, we have also read the Restatement of the Law of Torts, vol. 2, § 436 (and comment p. 1180), as published by the American Law Institute. Section 313 of the same publication is cited by appellants and, together with a comment thereon, has also been examined.

An interesting discussion of the question will also be found in volume 41 of the American Law Register, at page 141.

The court of appeal of Ireland, in the case of *Bell v. Great Northern R. Co. of Ireland,* 26 Law Reports (Ireland) 428, considered a problem very similar to that here presented. Judgment on a verdict in plaintiff's favor was sustained, the injuries for which re-

594

covery was allowed being largely, if not entirely, the result of fright. In connection with this case, the respondent argues that some physical injury was suffered by the plaintiff, who was a passenger in a railway coach which was involved in an accident. While it is true that the plaintiff might have been somewhat shaken by a sudden stop of the train on which she was riding and her physical status thereby interfered with, the case is of interest in connection with an analysis of the law applicable to the case at bar.

The opinion of the King's Bench Division in the case of *Dulieu v. White & Sons,* found in volume 2 of the Law Reports of that court for the year 1901, at page 669, is in point. It was alleged that the plaintiff, who was the wife of a licensed victualer, was, on the day of the accident (she being then pregnant), behind the bar of her husband's public house; that the defendant's servant negligently drove a two-horse van into the public house, severely frightening plaintiff; and that, as a result of the shock, she, during the month of September following, gave premature birth to a child, who, as a result of the fright suffered by the mother, was born an idiot. The "statement of defense," after denying the allegations contained in the statement of claim, submitted as a matter of law that the damages sought to be recovered were too remote, and that the statement of claim failed to state a cause of action. The judges, in considering the question of law raised by the defendant, which was in the nature of a demurrer, held that the plaintiff had pleaded facts which, if sustained by the evidence, entitled her to relief. Judges Kennedy and Phillimore, writing separate opinions, discussed the cases, both English and American, at considerable length, their conclusions being of great interest and supporting our decision herein.

The opinion of the supreme court of New Hamp-

shire, in the case of *Chiuchiolo v. New England Whole-
sale Tailors*, 84 N. H. 329, 150 Atl. 540, is also an
authority which supports our conclusion.

In the case at bar, the jury may well have found that,
as a result of the fright suffered by Mrs. Frazee, she
suffered an immediate physical injury. In this con-
nection, it might well be argued that such physical in-
jury was more directly connected with appellants' neg-
ligent act than was the injury suffered by the plaintiff
in the *O'Meara* case.

After careful study of the authorities, we hold that,
upon the record herein, appellants are not entitled to
judgment in their favor as matter of law.

■ Appellants assign error upon four instructions
given by the trial court. The court instructed the jury:

". . . that before the plaintiffs can recover in
this action they must prove by a fair preponderance of
the evidence

"1st. That the plaintiff wife saw the truck in ques-
tion as it came down the hill, and came up on the ter-
race of her yard, and was so frightened thereby that
actual physical injury resulted to her person from the
shock."

Appellants excepted to this instruction, contending
that the word "immediately" should follow the words
"injury resulted." The court later told the jury that
respondents must prove by a fair preponderance of
the evidence "that any physical disability or illness
suffered by the said plaintiff subsequent to said alleged
fright was proximately caused by said fright," and the
two instructions, together with others given by the trial
court, properly placed before the jury the phase of the
case covered by the instruction criticized by appellants.
Use of the word "immediately" would have been mis-
leading. It could not be said that, if the fright had
caused Mrs. Frazee to fall in a faint, appellants would
have been liable, but that, if she had within an hour or

two hours suffered a miscarriage as the proximate result of the affair, appellants would not have been liable.

■ Appellants criticized another instruction for the same reason, contending that the court, in referring to pain and suffering resulting from fright, should have told the jury that any physical injury ensuing must be simultaneous with, or immediately following, the fright or shock. The rule contended for by appellants is too strict. The instructions are not obnoxious to the exceptions thereto taken by appellants.

■ The court further instructed the jury as follows:

"If you find that the situation existing at the very moment of the upset was such that it constituted an immediate physical invasion of the personal security of the plaintiff wife, which she could not avoid, and that the shock, if you find there was such, to the nerves and nervous system of plaintiff wife was practically simultaneous with the upset and that her actions were spontaneous and not the result of deliberation or conscious volition but were, on the contrary, the natural reactions to the situation, then plaintiffs are entitled to recover for such injuries as you find they may have sustained."

Appellants excepted to this instruction, basing their objection upon the ground that there was no evidence that any physical invasion of the personal security of Mrs. Frazee had occurred, and that no definition of the phrase was given. Appellants also excepted to the instruction upon the ground that there was no evidence that Mrs. Frazee did anything, she having testified that, during the moment of stress, she sat still, too terrified to move. Exceptions to the instruction are not well taken. The jury could not have been misled by the instruction, and the words which appellants contend should have been explained, considered with the other instructions given, are perfectly plain.

■ Appellants criticize another instruction given by the trial court, to which they excepted, in which the court told the jury that, if they found that the injuries sustained by Mrs. Frazee were not only mental, but physical, and that such physical injuries were caused from fright, and that, if they further found that the appellants had been negligent, their verdict should be for the respondents. Appellants argue that the court did not in any way connect any negligence of which the jury might find appellants had been guilty with the fright suffered by Mrs. Frazee, and that the instruction contained nothing concerning proximate cause or the necessary connection between the negligence and the injury. These matters were amply covered by other instructions given to the jury, and, as the instructions must be considered as a whole, we find no error in the last one of which appellants complain.

■ Finally, appellants assign error upon the refusal of the trial court to give an instruction which they requested, to the effect that, if the jury should find from the evidence that appellants could not have reasonably foreseen such a result as did occur, the verdict should be in appellants' favor. Considering the evidence and the instructions as given, we find no error in the refusal of the trial court to give this instruction. Appellants were liable for the natural and probable consequences which might result from the act of negligence committed, and their measure of responsibility is not limited by any rule that they should not be held liable unless it should be held that they must have reasonably anticipated just such an injury as that which occurred.

The record is free from error, and the judgment appealed from is affirmed.

MILLARD, C. J., MAIN, MITCHELL, TOLMAN, HOLCOMB, STEINERT, and GERAGHTY, JJ., concur.

598 ·

BLAKE, J. (dissenting)—The holding in this case goes far beyond that in the case of *O'Meara v. Russell,* 90 Wash. 557, 156 Pac. 550. In that case, as pointed out by Judge Mount in *Kneass v. Cremation Society of Washington,* 103 Wash. 521, 175 Pac. 172, 10 A. L. R. 442, plaintiff's injuries were the direct result of physical exertion incident to an effort to escape from an imminent peril which was the direct consequence of defendant's negligence. In the instant case, recovery is allowed for the consequences of fright alone. My objection to the holding is that it leaves no standard whatever for the determination of liability for negligence in cases of this character. Under this holding, recovery may as well be had by the personal representative of a man who, seeing an automobile careening down the street, dies of heart failure.

