[No. 11024–5–II.   Division Two.   December 21, 1988.]

THEODORE L. JACOBS, ET AL, *Appellants,* v. CALVARY
CEMETERY & MAUSOLEUM, *Respondent.*

*James M. Caraher* and *Anderson, Caraher, Brown & Burns,* for appellants.

*William R. Phillips, Timothy R. Gosselin,* and *Burgess, Kennedy, Fitzer & Strombom, P.S.,* for respondent.

WORSWICK, J.—Theodore and Carole Jacobs appeal an order reducing the verdict or, alternatively, granting a new

trial in this emotional injury case. Calvary Cemetery cross–appeals, contending that it should not have been held liable at all. We reverse the alternative order, and reinstate and affirm the verdict.

Calvary undertook to entomb the body of 5–year–old Alison Jacobs in its mausoleum. The crypt was to be closed with a marble shutter secured by "Vandal Stop" screws. However, for about a 2–week period while the shutter was being inscribed, the crypt opening was covered only by a thin fiber glass barrier fastened on with caulking compound. Alison's body, apparently removed during this period, was found in a remote part of the cemetery several weeks later. This action followed.

The trial court reduced the $200,000 verdict to $53,600, providing in its order that a new trial would be granted if the Jacobses refused to accept the reduction. See RCW 4.76.030. The court rejected Calvary's various challenges to the evidence and motions to dismiss.

Calvary concedes that, having agreed to inter the body, it had a duty to do so properly. It goes on to argue, however, that it should not be liable because what happened was not foreseeable, and also that the Jacobses were not entitled to damages because they were only "bystanders." We disagree.

■ The evidence justified jury findings that prowling and vandalism in cemeteries is common, that a secure barrier against entry to this crypt was necessary, that a thin fiber glass barrier was an enticement to mischief, and that, although what happened here was unusual in this locale, trade publications of which Calvary personnel presumably were aware frequently reported similar incidents elsewhere. From this the jury could conclude that Calvary was negligent in failing properly to secure the crypt, and that the consequences were within the general field of danger that should have been anticipated. *McLeod v. Grant Cy. Sch. Dist. 128*, 42 Wn.2d 316, 255 P.2d 360 (1953).

The Jacobses were not bystanders. Calvary's responsibility, by contract, ran directly to them, and Calvary's liability

arose out of the negligent performance of its contract. *Wright v. Beardsley,* 46 Wash. 16, 89 P. 172 (1907).[1]

Although we are loath to disturb a trial court's order granting a new trial, we conclude that the alternative order here was an abuse of discretion. The order recites two grounds: (1) damages so excessive as to indicate that the verdict must have been the result of passion and prejudice; (2) an unfair trial because of irregularities in the proceedings. The reasons given under the first ground, having to do with the amount of special damages, an expert witness's vague prediction of the Jacobses' outlook for the future and the like, were inadequate to justify the order given the nature of the case and the kind of injury involved. *See Bingaman v. Grays Harbor Comm'ty Hosp.,* 103 Wn.2d 831, 699 P.2d 1230 (1985); *Stanard v. Bolin,* 88 Wn.2d 614, 621, 565 P.2d 94 (1977); *Johnson v. Marshall Field & Co.,* 78 Wn.2d 609, 478 P.2d 735 (1970). Also, we are satisfied after reading the trial court's remarks that these reasons (the only reasons advanced by Calvary) were not the real basis for the court's ruling, but that the "irregularities" were.

The first "irregularity" cited was an incident, reported to the judge by his staff, in which the Jacobses' attorney

---

[1]Cases in this field almost uniformly have found the basic duty underlying liability in a contractual relationship. Violation of that duty, whether negligent or intentional, has then been analyzed in accordance with tort principles. *See, e.g., Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 577 P.2d 580 (1978); *Gadbury v. Bleitz,* 133 Wash. 134, 233 P. 299, 44 A.L.R. 425 (1925); *Wright v. Beardsley, supra; Johnson v. Woman's Hosp.,* 527 S.W.2d 133 (Tenn. Ct. App. 1975).

Plainly, damage awards in this field have never been based on bystander liability, but on the violation of a duty owed to the contracting plaintiff. *See Wright v. Beardsley, supra.* While *Hunsley v. Giard,* 87 Wn.2d 424, 553 P.2d 1096 (1976) expanded the potential for recovery on claims of emotional injuries, *Beardsley* authorized such recovery in this type of case more than 80 years ago.

On its motion for reconsideration, Calvary for the first time cites several additional cases, among them *Kneass v. Cremation Soc'y,* 103 Wash. 521, 175 P. 172 (1918), for the proposition that there can be no recovery for emotional injuries absent an intentional act. *Hunsley v. Giard, supra,* completely disposes of this contention. Recovery for negligent infliction of emotional distress is authorized where, as here, the emotional injuries are manifested by objective symptoms.

apparently asked the staff if they had tissue on hand because "there would be a lot of crying in this case." The jury never learned of this and, if it happened, it suggests nothing more than poor judgment of the attorney. The second "irregularity" mentioned had to do with the Jacobses' tearful and emotional behavior during trial and their expressions of hatred for Calvary personnel. None of this was surprising, considering the facts of the case. Moreover, Calvary never objected to any of these expressions, and did not contend, during trial or later, that any irregularity resulted. They do not support the order.

Finally, and obviously of greatest importance to the court, cited as an irregularity was a statement during Mr. Jacobs's testimony that the court took to be a flagrant request for punitive damages. The statement, set forth in the margin,[2] responded to questioning about why Mr. Jacobs was angry. Counsel for Calvary did not object. He attempted, though, to cross–examine on the subject because he thought Mr. Jacobs claimed that Calvary did not safeguard the crypt better because it was trying to save money. During colloquy, the court gave the remark the "punitive damages" interpretation, but also noted that Calvary had raised no objection during Mr. Jacobs's testimony.

In the circumstances, we cannot consider the statement an irregularity. At most, it might be considered an appeal to passion and prejudice. So considered, however, it falls short of supporting the order. Strictly speaking, the statement was unsolicited. However, as an expression of anger it was responsive to the question. Moreover, while arguably it was subject to the interpretation the court gave it, it was subject to completely innocent interpretations as well.

---

[2] "Q Are you angry?
"A Very much so.
"Q Do you know what you are angry about?
"A I'm angry that somebody did this to my little girl. I'm angry that somebody allowed this to happen through their own stupidity. I hope they saved enough to make it worthwhile."

An observation in *Bingaman* aptly describes this case:

Before passion or prejudice can justify reduction of a jury verdict, it must be of such manifest clarity as to make it unmistakable. This is not a case wherein the judgment of the jury has been so distorted by passion generated at trial that the court has the duty to substitute reason for retribution. Other than the amount of the verdict, the record in this case discloses nothing to suggest that the jury was prejudiced against the defendants or that it was incited by passion to regard the defense case unfairly.

*Bingaman,* 103 Wn.2d at 836.

The alternative order is reversed; the verdict is reinstated and affirmed.

ALEXANDER, A.C.J., and PETRICH, J., concur.

After modification, further reconsideration denied January 24, 1989.

Review denied at 112 Wn.2d 1015 (1989).