**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBINETTE AMAKER,<br>  *Plaintiff-Appellant,*<br><br>v.<br><br>KING COUNTY, a municipal corporation; STANLEY MEDICAL RESEARCH INSTITUTE, a foreign corporation; E. FULLER TORREY,<br>  *Defendants-Appellees.* | No. 07-35241<br><br>D.C. No.<br>CV-05-01470-MJP<br>Western District of Washington,<br>Seattle<br><br>ORDER<br>CERTIFYING<br>QUESTIONS TO<br>THE<br>WASHINGTON<br>SUPREME COURT |

Filed August 26, 2008

Before: Richard R. Clifton and N. Randy Smith,
Circuit Judges, and Brian E. Sandoval,* District Judge.

---

**COUNSEL**

Stephen L. Bulzomi (argued), Jeremy A. Johnston, Messina Bulzomi Christensen, Tacoma, Washington, for the appellant.

Grant S. Degginger (argued), June K. Campbell, Ryan P. McBride, Lane Powell PC, Seattle, Washington, for the appellees.

---

*The Honorable Brian E. Sandoval, United States District Judge for the District of Nevada, sitting by designation.

**ORDER**

In this case arising out of diversity jurisdiction, we are asked to decide whether Robinette Amaker, the surviving sister of Bradley Gierlich, may bring suit against defendants King County, Stanley Medical Research Institute ("SMRI"), and E. Fuller Torrey, after the King County Medical Examiners Office ("KCMEO") provided Bradley's[1] brain, liver, and spleen tissue to SMRI for use in medical research without obtaining consent from either Bradley or his next of kin.

The issues that we address here relate to Amaker's first two causes of action. The district court concluded that Amaker, as Bradley's sister, lacked standing to raise a claim for tortious interference with a corpse. At the time of Bradley's death his next of kin, as defined by the Revised Code of Washington ("RCW) § 68.50.160, was Robert Gierlich, Bradley's father. The district court concluded that Robert was the only individual with the right to bring a tortious interference claim because only he had the right to dispose of Bradley's corpse. *See Wright v. Beardsley*, 89 P. 172 (Wash. 1907); *Gadbury v. Bleitz*, 233 P. 299 (Wash. 1925). Additionally, the district court dismissed Amaker's claim that the defendants violated the Washington Anatomical Gift Act ("WAGA"), RCW § 68.50.520 *et seq.* (repealed by Wash. Laws 2008, ch. 139, §31), because it concluded that the WAGA does not create an implied private right of action.

Ultimately, we conclude that the state law is unsettled with respect to both of these claims, and the answers to the questions we pose are dispositive of the issues before us. Specifically, we ask the Washington Supreme Court to determine whether Robinette Amaker, the decedent's sister, has standing to bring a claim for tortious interference with a corpse, and whether the WAGA creates a private right of action.

---

[1]We refer to Bradley and Robert Gierlich by their first names because they share the same last name.

## I

Before addressing the questions certified to the Washington Supreme Court, we first summarize the material facts and procedural history. Bradley Gierlich died of an apparent drug overdose on October 13, 1998, in Seattle, Washington. **[ER 228.]** He was survived by his father, Robert Gierlich, his sister, Robinette Amaker, and his aunt, Teresa Wright. Robert and Amaker lived in Florida at the time, while Wright lived in Seattle. Bradley died intestate and left no instructions to his surviving family members as to the disposition of his remains.

Because of the circumstances surrounding Bradley's death, King County took possession of Bradley's body and KCMEO pathologist, Dr. Menchel, performed an autopsy on Bradley's body. *See* RCW § 68.50.010. At the time of the autopsy, Dr. Menchel attempted to contact Bradley's next of kin, Robert, in order to get consent to donate some of Bradley's organs and tissues for research. Dr. Menchel was unable to reach Robert in Florida despite numerous attempts to contact him by telephone. Although Dr. Menchel admits that he was unable to reach Robert, he claims that he spoke extensively with Wright about Bradley's medical history and the organ donation process. **[ER 101.]** Dr. Menchel contends that he received assurance from Wright that Robert would consent to the organ donation.**[** *Id.* **]** Because of these assurances, Dr. Menchel sent Robert a consent form via mail and proceeded to harvest the organs, on the assumption that Robert would eventually agree to donate his son's organs. Wright does not recall having a discussion with Dr. Menchel and she says that she would not have indicated that Robert was willing to consent to organ donation. **[ER 268-69.]** In any event, it is undisputed that KCMEO sent parts of Bradley's brain and other tissue to SMRI without first obtaining consent from Robert Gierlich.

KCMEO also failed to obtain Amaker's consent to donate Bradley's organs despite the fact that Amaker was in Seattle

shortly after Bradley's death in order to attend to the funeral arrangements. **[ER 135.]** Amaker alleges now that she would not have consented to the organ donation had they asked because Bradley, before his death, indicated that he did not wish to have his organs donated.

Amaker learned of the disposition of Bradley's remains years later when a reporter contacted her and asked whether Bradley's brain had been used for research. **[ER 143.]** The reporter told Amaker that he was investigating allegations that brains were being harvested without family consent in order to study schizophrenia and bipolar disorder. **[Id.]** This prompted her to investigate further, and Amaker found that her brother's tissue had been provided by KCMEO to SMRI for research without any record of anyone in her family consenting to the donation. **[ER 144.]** Upon learning that SMRI had Bradley's brain tissue, Amaker requested that they test the tissue for CADASIL, a degenerative brain disease that had afflicted her father before his death in 2005. **[ER 144.]** When her brother's sample showed that he too was afflicted with CADASIL before his death, Amaker began taking preventative medication in order to ward off the effects of the disease. **[ER 145.]**

Amaker then filed suit against King County, SMRI, and the Director of the Stanley Brain Research Laboratory, E. Fuller Torrey, in Pierce County Superior Court on August 19, 2005 alleging violations of state law tortious interference with a corpse, negligent infliction of emotional distress, conversion, civil conspiracy, invasion of privacy, violations of the WAGA, and the consumer protection act. The defendants removed the case to federal district court in the Western District of Washington. Prior to summary judgment, plaintiff conceded dismissal of all claims except the claims for common law interference with a corpse, civil conspiracy, invasion of privacy, and violations of WAGA.

The district court granted summary judgment to the defendants on Amaker's invasion of privacy claim and the civil

conspiracy claim because harvesting and shipping Bradley's brain did not constitute "publicity" and because there was no evidence that SMRI and KCMEO agreed to unlawfully harvest organs without donor consent. *Amaker v. King County*, 479 F.Supp.2d 1151, 1157-59 (W.D. Wash. 2007). In a subsequent order, the district court acknowledged that the plaintiffs had sufficiently pled a state law tortious interference with a corpse claim, but concluded that Amaker lacked standing to pursue the claim because she was not Bradley Gierlich's next of kin at the time of his death. *Amaker v. King County*, 479 F.Supp.2d 1159 (W.D. Wash. 2007). Finally, the district court granted summary judgment in favor of the defendants because it concluded that the WAGA did not create an implied private right of action. *Amaker v. King County*, 479 F.Supp.2d 1162 (W.D. Wash. 2007). Amaker appealed the district court on all remaining claims. We dispose of Amaker's invasion of privacy and civil conspiracy claims in a memorandum disposition filed concurrently with this order. We now turn to the questions to be certified to the Washington Supreme Court.

II

A

The first issue we confront is whether Amaker, as the decedent's sister, is among the class of individuals that has standing to bring a claim for tortious interference with a corpse under Washington law. RCW § 2.60.020 permits us to certify questions of state law to the Washington Supreme Court when "it is necessary to ascertain the local law of [the] state in order to dispose of such proceeding and the local law has not been clearly determined." We certify this question to the Washington Supreme Court because we conclude that the Washington law on this question is unsettled and because the answer to the question is dispositive of Amaker's common law claim.

To begin with, it may help to place this issue in context. There are at least two general approaches to the problem of

who may bring a claim for tortious interference with a corpse. The traditional approach to standing, most commonly associated with the Restatement of Torts, identifies the tort as a claim deriving from a "quasi-property" right. *See Carney v. Knollwood Cemetery Ass'n*, 514 N.E.2d 430, 434 (Ohio Ct. App. 1986). Under this theory, the decendent's survivors have the right to bury or otherwise dispose of the body without interference, and the cause of action is somewhat analogous to tortious interference with a contract. *Id.* In order to bring a claim under this theory, the person bringing the suit must have the legal right to disposition of the body: "[o]ne who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon a body of a dead person or prevents its proper interment or cremation is subject to liability to *a member of the family of the deceased who is entitled to the disposition of the body*." *Id.* (citing 4 Restatement (Second) of Torts § 868 (1979)) (emphasis added).

A number of jurisdictions have followed this theory, and most have concluded that only the class of people designated either by statute or common law as the "next of kin" may bring a claim for interference with a corpse. *See, e.g., O'Dea v. Mitchell*, 213 N.E.2d 870, 872 (Mass. 1966) ("The absence of a surviving spouse and of contrary directions by the decedent must be alleged by the next of kin in order to establish their standing to sue."); *Siver v. Rockingham Mem'l Hosp.*, 48 F.Supp.2d 608, 612 (W.D.Va. 1999) ("[S]tanding is derivative of the exercised right to possess, preserve, and bury a corpse" and because "each plaintiff falls within the class of 'next of kin' articulated by the statutes relating to disposition and burial of a corpse" they may each bring a claim for interference with a corpse.); *Whaley v. County of Saginaw*, 941 F.Supp. 1483, 1491 (E.D.Mich. 1996) (concluding that under Michigan law, only those that are the "next of kin," as defined by the Michigan Supreme Court, has standing to sue for mutilation of a body); *cf. Allinger v. Kell*, 302 N.W.2d 576, 579 (Mich. Ct. App. 1981), *rev'd on other grounds*, 309 N.W.2d 547 (Mich. 1981); *Wages v. Amisub of Georgia*, 508 S.E.2d

783, 785 (Ga. App. 1998) (concluding that the theory of inter-ference with a corpse was based upon quasi-contract right and that without a contract for funeral services, plaintiffs could not state a claim for tortious interference with a corpse).

Courts in other jurisdictions have moved away from this approach and recognized that other close family members generally can bring suits for interference with a corpse under a subspecies of the tort of infliction of emotional distress. *Carney,* 514 N.E.2d at 435. Under this theory the claim is not based on "a property right in a dead body but in the personal right of the family of the deceased to bury the body." *Id.* (citations omitted). These jurisdictions now conclude that any "close" or "immediate" member of the decedent's family may bring suit for tortious interference with a corpse. *See, e.g., id.* (rejecting "the theory that a surviving custodian has quasi-property rights in the body of the deceased, and acknowledg-[ing] the cause of action for mishandling of a dead body" but declining to define precisely which class of family members has standing); *Christensen v. Sup. Ct. of Los Angeles*, 820 P.2d 181, 183 (Cal. 1992) (concluding that the class of plain-tiffs with standing to sue went beyond those "who have the statutory right to control disposition of the remains and those who contract for disposition," to include those "close family members who were aware that the funeral . . . services were being performed"); *Contreraz v. Michelotti-Sawyers*, 896 P.2d 1118, 1122 (Mont. 1995) (holding that "close relatives," including children and grandchildren, have standing to sue).

Identifying the correct rule in Washington matters here because at the time of Bradley's death, his next of kin was his father. *See* RCW § 68.50.160(3). It was Robert, and not Amaker, that had the right and duty to dispose of Bradley's remains. If only the "next of kin" may bring a claim for tor-tious interference with a corpse in Washington, Amaker does not have standing. If, however, Washington recognizes a broader class of claimants, including other close relatives, then Amaker likely has standing.

Neither the Washington courts, nor the state legislature, have identified which theory of liability applies to these claims in Washington. At best, we are left to divine the Washington standing rule based upon some cryptic wording in two cases from the early twentieth century. In *Wright v. Beardsley*, the Washington Supreme Court noted that "[t]he persons who are the lawful custodians of a deceased body may maintain an action for its desecration." 89 P. 172, 173 (1907). Similarly, in *Gadbury v. Bleitz*, the Supreme Court noted that the right to maintain an action for interference with a corpse could vest in the mother of the decedent, because she was one responsible for disposition of the body. 233 P. 299, 300 (1925); *see also Herzl Congregation v. Robinson*, 253 P. 654, 473 (Wash. 1927) (adopting the proposition that "the right to bury a corpse . . . belongs exclusively to the next of kin"). In both cases the parent or parents of the decedent, as the decedent's next of kin, were permitted to bring suit for tortious interference with a corpse.

Although the seminal Washington cases establishing the common law tort of interference with a corpse allude to a more limited standing class, more recent Washington cases have suggested contradictory standards. In *Jacobs v. Calvary Cemetery & Mausoleum*, 765 P.2d 334, 335 (Wash. Ct. App. 1989), a cemetery negligently interred the remains of the Jacobs' five-year-old daughter. As a result, vandals were able to remove the body and leave it in a remote part of the cemetery. *Id.* The defendants contended that the parents were not entitled to sue because they were merely "bystanders." Relying upon *Wright* and *Gadbury*, the court noted that the parents could bring suit because "damage awards in this field have never been based on bystander liability, but on the violation of a duty owed to the contracting plaintiff." *Id.* at 335 n.1. *Jacobs* suggests that Washington courts may continue to recognize a limited approach to standing like that established in the Restatement.

On the other hand, the Washington Supreme Court has recently suggested that tortious interference with a corpse

claims may be brought by family members other than those that have the right to dispose of the decedent's remains. In *Reid v. Pierce County*, 961 P.2d 333 (Wash. 1998) (en banc), the court alluded to the fact that the plaintiffs, including the decedent's surviving niece, could bring claims for tortious interference with a corpse. Although the Washington Supreme Court did not directly address the issue, the decision suggested that it might be willing to recognize a broader standing class. *Id.* at 339-40.

Although there is some language in Washington state court decisions suggesting that Washington recognizes the Restatement approach to standing, we think that the more prudent course is to seek guidance from the Washington Supreme Court itself. Therefore, we are persuaded that certification is the correct course of action here. No Washington state court has explicitly defined the class of plaintiffs with standing to bring this particular claim. When we are left without a definitive rule statement on a question of state law, like we are here, "[w]e are not making the most of our opportunity to cooperate as judicial neighbors, and we are not in tune with the requirements of judicial federalism, when we declare state law . . . without first asking the state supreme court for clarification." *Johnson v. Hawe*, 388 F.3d 676, 689 (9th Cir. 2004) (Gould, J. dissenting). In the end we conclude that it is for the state to determine who should be able to pursue this claim and what limits to impose on liability.

B

The second issue that we address is whether the WAGA creates an implied private right of action. Amaker maintains that the defendants violated the Act when they failed to obtain written consent from her prior to providing Bradley's organs to SMRI. RCW § 68.50.550(3) (repealed by Wash. Laws 2008, ch. 139, §31).[2] Amaker claims that the WAGA creates

---

[2]The Washington Anatomical Gift Act, RCW § 68.50.520 *et seq.*, has been repealed and revised effective June 12, 2008. The Revised Anatomi-

an implied private right of action which allows her to recover for the violation. We also certify this question to the Washington Supreme Court.

No Washington court has yet confronted the issue of whether the WAGA creates a private right of action. The only reported Washington case to consider the WAGA is a court of appeals case that construed the good faith immunity provision of the Act. *See Sattler v. Nw Tissue Ctr.*, 42 P.3d 440, 444 (Wash. Ct. App. 2002). The Washington legislature has authorized the courts to look to other jurisdictions in interpreting Uniform statutes, including the WAGA. *See* RCW § 68.50.520 (repealed by Wash. Laws 2008, ch. 139, §31); *Sattler*, 42 P.2d at 443. Unfortunately, we are unaware of any jurisdiction that has expressly addressed the question of whether the Uniform Anatomical Gift Act creates an implied right of action.

We recognize that we have been willing to decide similar questions in the past without certifying questions to the state supreme court. For example, in *Duffy v. Riveland*, 98 F.3d 447, 458-59 (9th Cir. 1996), we applied Washington law and

cal Gift Act is substantially similar to the 1993 legislation applicable at the time of the alleged violation, although the revised legislation does not have mandatory language with respect to the consent provision. *Compare* RCW § 68.51.090 (2008) ("A person authorized to make an anatomical gift . . . may make an anatomical gift by a document of gift signed by the person making the gift or by that person's oral communication that is electronically recorded or is contemporaneously reduced to a record and signed by the individual receiving the oral communication.") *with* RCW § 68.50.550(3) (2006) ("An anatomical gift made by [an authorized family member] must be made by (a) a document of gift signed by the person or (b) the person's telegraphic, recorded telephonic, or other recorded message, or other form of communication from the person that is contemporaneously reduced to writing and signed by the recipient of the communication."). In Washington, amendments to legislation are presumed to apply prospectively only. *In re F.D. Processing, Inc.*, 832 P.2d 1303 (Wash. 1992) (en banc).

determined that another Washington statute created a private right of action without resorting to a certification order in that instance. Nonetheless, we think it prudent, given the circumstances in this case, to seek guidance from the Washington Supreme Court on this question.

The Washington Supreme Court may wish to consider these two issues in conjunction. This case presents an opportunity for the state supreme court to identify which claims may be brought in cases arising out of non-consensual organ donation. Likewise, the court may wish to consider the interplay between the Anatomical Gift Act and claims for tortious interference with a corpse. For example, under the district court's analysis Amaker does not have standing to bring a tortious interference claim because she was not the "next of kin" and did not have the right to dispose of Bradley's remains. *See Amaker*, 479 F.Supp.2d at 1161-62. On the other hand, the district court found that Amaker had standing to bring a claim under the WAGA, because Robert was "unavailable" at the time of Bradley's death, and therefore she was capable of consenting to the donation. *See Amaker*, 479 F.Supp.2d at 1156-57. Thus, Amaker argues there is tension between the two holdings: she was legally permitted to donate Bradley's organs, but she did not have the legal right to dispose of the body. The Washington court may wish to remedy this tension, or it may conclude that the policy rationales behind the common law claim and the WAGA compel this outcome. More broadly, it may be that each law is aimed at remedying different harms, it may be that both the common law claim and the statute allow for recovery in this instance, or it may be that neither the common law claim nor the statute allows for recovery in this particular situation. In any event, we leave it for the Washington Supreme Court to decide.

## III

In light of the foregoing discussion, and because the answer to these questions is "necessary to ascertain the local law of

this state in order to dispose" of the issues on appeal, RCW § 2.60.020, we respectfully certify to the Washington Supreme Court the following questions:

(1) Whether only those individuals identified as "next of kin" as defined by RCW § 68.50.160 at the time of the decedent's death have standing to bring a claim for tortious interference with a corpse?

(2) If the answer to the above question is "no," whether Amaker, the decedent's sister, is within the class of plaintiffs that may bring a claim for tortious interference with a corpse?

(3) Whether the Washington Anatomical Gift Act, RCW § 68.50.520 *et seq.*, creates an implied private right of action upon which Amaker may state a claim?

We do not intend our framing of the questions to restrict the Washington Supreme Court's consideration of these issues. The Washington Supreme Court, in its discretion, may choose to reformulate the questions presented. *Broad v. Mannesman Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

If the Washington Supreme Court accepts review of the certified questions, we designate appellant Amaker to file the first brief pursuant to Washington Rule of Appellate Procedure 16.16 (e)(1).

The Clerk of Court is hereby ordered to transmit forthwith to the Washington Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all briefs and excerpts of record. RCW § 2.60.010, 2.60.030; Wash. R. App. P. 16.16.

Further proceedings in our court on the certified questions are stayed pending the Washington Supreme Court's decision

on whether it will accept review, and if so, receipt of the answer to the certified question. The case is withdrawn from submission until further order from this court. The panel will resume control and jurisdiction over the certified questions when either the Washington Supreme Court answers the certified questions or declines to answer the questions. When the Washington Supreme Court decides whether or not to accept the certified questions, the parties shall file a joint report informing this court of the decision. If the Washington Supreme Court accepts the certified question, the parties shall file a joint status report informing this court when the Washington Supreme Court issues its answers.

It is so **ORDERED.**

_____

Chief Judge Alex Kozinski

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2008 Thomson Reuters/West.