**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 18, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 18, 2021

*Susan L. Carlson*

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | ) ) ) ) | |
| ROBERT FOX, | ) ) | |
| Plaintiff, | ) ) | No. 98514-6 (certified C19-0955RSL) |
| v. | ) ) | En Banc |
| CITY OF BELLINGHAM, | ) ) | Filed : March 18, 2021 |
| Defendant. | ) ) | |

OWENS, J. — The United States District Court for the Western District of

Washington asks us via certified question[1] to answer who has standing to bring an

action for tortious interference with a deceased body—a tort action that we have

addressed on only a few occasions in the last century. In this case, Mr. Robert Fox

alleges that he experienced severe emotional distress when he learned that the city of

---

[1] Order Certifying Questions to Wash. Supreme Ct., *Fox v. City of Bellingham*, No. C19-0955RSL, at 4-5 (W.D. Wash. Apr. 28, 2020).

*Fox v. City of Bellingham*
No. 98514-6

Bellingham Fire Department placed medical tubes inside his deceased brother as part of a training exercise without receiving consent from the family.

The city of Bellingham (City) asks the court to dismiss Mr. Fox's claim, asserting that Mr. Fox, as the brother of the deceased, who is not the custodian of his brother's remains under RCW 68.50.160, is an improper party to bring this suit. Whether someone such as Mr. Fox has standing to bring such a suit is an issue of first impression for this court. The City asserts that standing to bring such a suit is limited to those charged with the care of their relatives' remains under RCW 68.50.160, while Mr. Fox asks the court to permit close relatives to bring suit as foreseeable plaintiffs.

Over 100 years ago, this court recognized the purpose behind this action was to compensate those who suffer from the emotional distress arising from the mistreatment of their loved ones' remains. We follow in their reasoning today and hold that standing for this action is meant to address that harm. Accordingly, we hold that Mr. Fox has standing to bring an action for interference with his brother's body.

## I. STATEMENT OF FACTS

This case reaches us via questions certified by the United States District Court for the Western District of Washington at Seattle. Order Certifying Questions to Wash. Supreme Ct., *Fox v. City of Bellingham*, No. C19-0955RSL, at 4-5 (W.D. Wash. Apr. 28, 2020). The question regarding standing was raised by the City. *Id*. at 1. We construe the alleged facts and inferences in the light most favorable to the

2

*Fox v. City of Bellingham*
No. 98514-6

nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015) (citing

*Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)).

Mr. Fox is the brother of the decedent, Mr. Bradley Ginn Sr. Mr. Fox and his

brother previously lived together and spoke to each other weekly. Mr. Ginn passed

away in 2018. When the hospital in Bellingham did not have space to store his body,

the fire department brought Mr. Ginn's body to the station.

After relocating Mr. Ginn, the fire department, without obtaining permission

from Mr. Ginn's family, used Mr. Ginn's body for a training exercise. Fire

department employees took turns intubating Mr. Ginn's deceased body—

approximately 15 times. Mr. Fox claims that he experienced severe emotional distress

upon learning of these events. Thereafter, Mr. Fox participated in planning his

brother's end of life celebration.

As a result of these events, Mr. Fox brings a claim of tortious interference with

a corpse against the City in federal court. The City moved for summary judgment,

asserting that Mr. Fox lacks standing because he is not the designated custodian of his

brother's remains under RCW 68.50.160. Under this statute, Mr. Ginn's wife[2] is

charged with the care of Mr. Ginn's remains.

---

[2] Mr. Ginn's wife brought a separate action in federal court.

3

*Fox v. City of Bellingham*
No. 98514-6

II. Certified Questions Presented

1. Whether only those individuals identified as "next of kin" as defined by RCW 68.50.160 at the time of a decedent's death have standing to bring a claim for tortious interference with a corpse?

2. Whether Mr. Fox, the decedent's brother, is within the class of plaintiffs that may bring a claim for tortious interference with a corpse?

III. Analysis

A. *This Court Has Not Addressed Standing for Relatives Like Mr. Fox in an Action for Tortious Interference with a Corpse*

We review certified questions from the federal courts de novo. *Brady v. Autozone Stores, Inc.*, 188 Wn.2d 576, 580, 397 P.3d 120 (2017).

The City asks the district court to dismiss the action, asserting that Mr. Fox does not have standing to bring an action for tortious interference with a corpse. The City argues that Mr. Fox lacks standing because he is not the lawful custodian of his brother's remains under RCW 68.50.160.

From the outset, it appears that standing for such relatives is an issue of first impression for this court. *Amaker v. King County*, 540 F.3d 1012, 1016, 1018 (9th Cir. 2008). The City argues to the contrary that the first case recognizing this tort, *Wright,* limited standing to those "persons who are the lawful custodians of a deceased body." *Wright v. Beardsley*, 46 Wash. 16, 18, 89 P. 172 (1907). The City frames this quote as meaning that *only* those with the responsibility of burial have standing.

We disagree. In *Wright*, this court allowed two parents to sue for an improper burial of their child. *Id*. at 17. Thus, while *Wright* held that lawful custodians of a

4

*Fox v. City of Bellingham*
No. 98514-6

deceased body could bring a claim, it never restricted others from doing so. Additionally, none of the cases following *Wright* limited standing.

Since *Wright*, we have had few opportunities to address this cause of action. In the rare occasions[3] that we have, none of the cases involved a family member other than a parent. *Gadbury v. Bleitz*, 133 Wash. 134, 136, 233 P. 299 (1925) (expanding tort beyond wrongful burial for mother); *Adams v. King County*, 164 Wn.2d 640, 192 P.3d 891 (2008) (declining to adopt *Restatement*[4] version of tort for mother suing on behalf of child).

Accordingly, we have not yet had the opportunity to address this issue in our state and this issue is one of first impression. We turn to the relevant history and policy to address this issue.

B. *Tortious Interference with a Corpse Was Historically Rooted in Property Law Because Suits for Emotional Damages Alone Were Traditionally Barred*

We first look to the origins and historical development of this species of tort for guidance. At the time of *Wright*, this court did not permit suit for emotional damages in tort actions. *See Wright,* 46 Wash. at 17-20; *Corcoran v. Postal Telegraph-Cable Co.*, 80 Wash. 570, 575, 142 P. 29 (1914) (mental suffering actions were limited to negligence cases with physical injury, breach of marriage contracts, and willful wrongs typically

---

[3] While the City additionally relies on *Herzl Congregation v. Robinson*, 142 Wash. 469, 253 P. 654 (1927), *Herzl* did not involve a claim of tortious interference with a corpse.

[4] The *Restatement* allows recovery for negligent interference with a corpse and limits standing to the "next of kin," although it takes no position regarding standing for other family members. RESTATEMENT (SECOND) OF TORTS § 868 caveat cmts. a, b (AM. LAW INST. 1979).

5

*Fox v. City of Bellingham*
No. 98514-6

affecting liberty, character, reputation, personal security, or domestic relations);

RESTATEMENT OF TORTS § 46 (AM. LAW INST. 1934) (suits for conduct intended to

cause emotional distress generally not allowed).

Faced with these limitations, early courts would permit suit; albeit, traditional tort

doctrine was circumvented by classifying these actions under other areas of law. *See*

*Wright*, 46 Wash. at 19 (plaintiffs bringing contract suit to recover for mental anguish);

*Larson v. Chase,* 50 N.W. 238 (Minn. 1891) (mutilation of a corpse is not a trespass

against property but an action for injured feelings). The *Restatement*'s reporters

recognized this "quasi-property" doctrine as a legal fiction, noting that a corpse does not

easily fit into the "category of property, since the body ordinarily cannot be sold or

transferred, has no utility and can be used only for the one purpose of interment or

cremation. In practice the technical right has served as a *mere peg upon which to hang*

*damages*." RESTATEMENT (SECOND) OF TORTS § 868 cmt. a. (emphasis added); *Carney*

*v. Knollwood Cemetery Ass'n*, 33 Ohio Ct. App. 3d 31, 36, 514 N.E.2d 430 (1986) (the

"quasi-property" theory was used to "conceal[] the real basis for damages, which is

mental anguish").

While the *Restatement* drew from the great corpus of early 20th century

American law in classifying the claim as a quasi-property action, some early

courts, such as our own, did not shy away from recognizing the true basis of the

claim. As *Wright* clearly articulated, such actions are aimed at compensating for

"a wrong against the feelings of the plaintiffs inflicted by a wrongful and improper

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

burial of their dead. . . a tort or injury against the person." *Wright*, 46 Wash. at 19;

*see also Larson*, 50 N.W. at 239-40.

Although *Wright* recognized the true nature of the tort, we have not yet

defined the scope of standing for this claim and whether it should be limited by the

quasi-property doctrine that many other jurisdictions have followed. To make this

determination, we analyze the underlying policy and practical effects of the quasi-

property approach.

C. *The Basis for Treating the Corpse as Property Has Eroded—Washington Law
   Now Recognizes Recovery for Emotional Injuries without Physical Harm*

As this court has carefully crafted the common law of torts, this continual

evolution has required us to cautiously balance the needs of the aggrieved with the rights

of defendants. We must both recognize and address the evolving needs of society while

simultaneously setting reasonable limitations so as to not open the proverbial floodgates

of litigation. The City asserts here that permitting any class greater than the custodian of

remains to bring suit will expose defendants to virtually endless liability. We disagree.

While we seldom have had the occasion to address the intricacies of this tort, the

heart of the City's standing argument is one that we have previously addressed. For

example, in *Grimsby v. Samson*, we permitted family members to bring suit under the tort

of outrage when they were present at the scene of an intentional and outrageous act. 85

Wn.2d 52, 60, 530 P.2d 291 (1975). The defendants in *Grimsby* presented two

arguments against expanding standing that mirror the City's arguments today: first, that

*Fox v. City of Bellingham*
No. 98514-6

"courts will be flooded by fraudulent claims" and second, that defendants will have "unlimited liability for every type of mental disturbance." *Id*. at 58.

In *Grimsby*, we noted that our courts and juries act as sufficient barriers to protect defendants against fraudulent claims. *Id*. at 58-59. Furthermore, we reasoned that defendants would not be subject to "unlimited liability" for every "mental disturbance" because standing was sufficiently limited by the intentional nature of the act. *Id*. at 59. We have not turned away from the principles we announced in *Grimsby*. Rather, our courts and juries continue to serve as barriers against fraudulent litigation. And this tort, similar to outrage, requires demonstration of intent and sufficiently limits the type and amount of claims that can be brought. *Wright*, 46 Wash. at 19.

In addition to these considerations, implementing RCW 68.50.160 as the test for standing would have arbitrary and harmful effects. If we applied this statute to determine standing, the determination of who could bring suit would be based on the randomness of familial survivorship. Thus, the right to sue could vest in some cases in a singular oldest child or sibling, when there could be many other children and siblings who suffer the same harm. In other scenarios, a friend, stranger, or even a funeral home charged with the responsibility could preclude other family members from bringing suit. *See* RCW 68.50.160(2), (3). This limitation makes little practical sense: "if the plaintiff wins simply because he has suffered mentally[,] there seems to be no basis for a rule that allows one individual a right of action and denies it to another who has essentially identical interests and has suffered equally from the wrong." *Carney*, 33 Ohio Ct. App.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

3d at 35 n.5 (quoting Harry R. Bigelow, Jr., Note, *Damages: Pleading: Property: Who May Recover for Wrongful Disturbance of a Dead Body*, 19 CORNELL L.Q. 108, 110-11 (1933)).

As *Wright* noted over 100 years ago, this action is meant to compensate for "a wrong against the feelings of the plaintiffs inflicted by a wrongful and improper burial of their dead. . . a tort or injury against the person." 46 Wash. at 19. As the foundations of the "quasi-property" doctrine have eroded through time, its application today would serve only as an unreasonable limitation to access to justice. Accordingly, we reject the narrow "quasi-property" approach to standing. Instead, we ask whether Mr. Fox falls within the class of foreseeable plaintiffs for this action.

D. *The Foreseeable Class of Plaintiffs Includes Close Relatives*

Tortious interference with a corpse, as recognized in our state, is an intentional tort.[5] *Id*. Intentional tort claims involve enhanced psychological culpability and diminished social utility compared to merely negligent acts. *Christensen v. Superior Court*, 54 Cal. 3d 868, 883, 820 P.2d 181, 2 Cal. Rptr. 2d 79 (1991) (quoting *Thing v. La Chusa*, 48 Cal. 3d 644, 652-53, 771 P.2d 814, 257 Cal. Rptr. 865 (1989)). Thus, the

---

[5] The City asserts that like outrage, Washington does not allow "bystander liability" and that Mr. Fox was not present when his brother was intubated. Def. City's Reply Br. at 10 (citing *Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 176 P.3d 497 (2008)). But to adopt such a limitation here would deny plaintiffs relief in all but the rarest of cases—and such situations are already likely covered by the tort of outrage. *Wright*, 46 Wash. at 16; *Gadbury*, 133 Wash. at 135-36; *see also Christensen v. Superior Court*, 54 Cal. 3d 868, 899, 820 P.2d 181, 2 Cal. Rptr. 2d 79 (1991). We impose no such limitation today.

*Fox v. City of Bellingham*
No. 98514-6

justification to limit standing for intentional torts is significantly weaker than with less culpable negligent conduct.

With this in mind, courts in neighboring jurisdictions have taken an expansive approach for this fairly rare species of torts, allowing claims from "close relatives," and in some cases, "close friends" to bring suit. *See, e.g.*, *Christensen*, 54 Cal. 3d at 883; *Carney*, 33 Ohio Ct. App. 3d at 37.

The City argues that we should not adopt the "close relatives" approach as this group is overly indefinite. Admittedly, "close relatives" is imprecise. But while we could announce a specific enumerated list of "close relatives" with standing, doing so could result in many of the same arbitrary limitations we seek to avoid by rejecting RCW 68.50.160.

We instead note that the range of "close relatives" with standing should not be circumscribed based solely on a set of definite familial relationships. Rather, several key factors are helpful in determining whether someone is a close relative. For instance, those family members who have shared significant and substantial contacts with the deceased during their lifetime are those who may foreseeably suffer significant mental anguish. We contemplate that a variety of familial relationships may indeed be closer than those shared within the nuclear family depending on the circumstances.

For example, a grandchild who lived with a grandparent or an aunt caring for a nephew for several years may be sufficiently close. An additional consideration, although not dispositive, is regularity in contact in the years preceding death. While we

10

*Fox v. City of Bellingham*
No. 98514-6

do not define with exactitude the entire spectrum of those who may bring such claims, these factors are highly relevant in this determination, although other details may also be important. Thus, this group of "close relatives" is included within the group of foreseeable plaintiffs, alongside those charged with the duty of burial as noted in *Wright*.

Applying these factors to the case at hand, Mr. Fox is Mr. Ginn's biological brother. Mr. Fox lived with his brother during his adult life, and the two spoke to each other weekly. Mr. Fox took part in preparing his brother's end of life celebration. Based on these facts, Mr. Fox has put forth sufficient evidence that he is a "close relative" of his brother and, therefore, has standing to bring suit.

IV. CONCLUSION

Historically, the tort of "interference with a corpse" was based on a "quasi-property" interest and limited standing to the next of kin. Washington has never placed such a strict limitation on standing. Since the early days of *Wright*, the rationale for the limitations associated with the quasi-property doctrine has eroded as tort law has evolved. As an intentional tort, standing is governed by the foreseeability of emotional harm and is not based solely on who has the statutory right of burial. Among the foreseeable class of plaintiffs for intentional interference are those "close relatives" with significant and substantial contacts with the deceased during their lives. Accordingly, we answer the federal court's certified questions as follows: (1) RCW 68.50.160 does not govern standing for tortious interference with a corpse and (2) Mr. Fox is in the class

11

*Fox v. City of Bellingham*
No. 98514-6

of foreseeable plaintiffs with standing to bring suit for tortious interference with a

corpse.

_____
Owens, J.

WE CONCUR:

_____
González, C.J.

_____

_____
Yu, J.

_____

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.

*Fox v. City of Bellingham*

No. 98514-6

MADSEN, J. (dissenting)—The present case asks us to determine who has standing to sue for tortious interference with a dead body. The majority is correct that this is a question of first impression, and, in my view, the answer is simple. "[P]ersons who are the lawful custodians of a deceased body may maintain an action for its desecration." *Wright v. Beardsley*, 46 Wash. 16, 18, 89 P. 172 (1907). RCW 68.50.160 codified common law custodians: control of bodily remains rests with the decedent and, absent a decedent's prearrangements, devolves along the lines of descent from surviving spouse or domestic partner to surviving children, surviving parents, and surviving siblings of the decedent. RCW 68.50.160(1), (3)(a)-(f); 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 14:18, at 697 (5th ed. 2020) (noting that Washington has codified the common law right to control bodily remains).

Our case law recognizes specific individuals, formally set out in RCW 68.50.160, may maintain actions for interfering with a deceased body. *See Wright*, 46 Wash. at 18; *see also Gadbury v. Bleitz*, 133 Wash. 134, 139, 233 P. 299 (1925) ("it has been held in many cases that those persons who by relationship have a peculiar interest in seeing that the last sad rites are properly given the deceased may maintain the action"); *Herzl*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Congregation v. Robinson*, 142 Wash. 469, 473, 253 P. 654 (1927) (holding that the right to bury and preserve bodily remains "'belong[] *exclusively* to the next of kin.'" (emphasis added) (quoting 4 Bradford Rep. 503, 532 (N.Y. Surr. Ct. 1857))). I can find no persuasive reason, nor has the majority provided one, for departing from this precedent, even though this court has not yet decided the parameters of standing. *See In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970) (stating that adherence to past decisions promotes clarity and stability in the law). Rather than bringing clarity to this discrete and long-standing tort claim, the majority replaces settled law with a case-by-case analysis and introduces uncertainty as to who has standing to bring this claim. And, rather than aligning this tort with other emotional harm torts, the majority inexplicably declines to set the same limitation that exists for other emotional harm torts: the requirement of presence.

Our case law permits only lawful custodians of bodily remains as set out in RCW 68.50.160 to bring actions for tortious interference. I would therefore answer yes to the first certified question and no to the second. The decedent in this case was survived by his wife, therefore, Robert Fox—the decedent's brother—lacks standing to sue the city of Bellingham for tortious inference with bodily remains. For these reasons, I respectfully dissent.

## Discussion

It is indisputable that Robert Fox and his family suffered from the loss of Bradley Ginn Sr., made all the more difficult by the circumstances surrounding the handling of

No. 98514-6
Madsen, J., dissenting

Ginn's body.  Indeed, it is likely that many other relatives and friends also feel pain and outrage as a result of the actions discussed herein.  I do not intend my discussion of the procedural matter at hand to discount this pain.  Nevertheless, the decision before this court is whether Fox, as Ginn's brother, had standing to sue for tortious interference.  In my view, he does not.

Washington common law has recognized tortious interference with a dead body for over 100 years, allowing recovery for mental suffering that stems from the willful misuse of a body.  *Adams v. King County*, 164 Wn.2d 640, 658, 192 P.3d 891 (2008).  The tort consists of a quasi-property interest in a decedent's body as well as an interest in its proper treatment.  *Herzl*, 142 Wash. at 472; *Amaker v. King County*, 540 F.3d 1012, 1016 (9th Cir. 2008).

*Wright* first articulated the tort of interference with a dead body.  46 Wash. at 20.  In that case, the court stated that "persons who are the lawful custodians of a deceased body may maintain an action for its desecration."  *Id*. at 18 (citing *J.E. Dunn & Co. v. Smith*, 74 S.W. 576 (Tex. Civ. App. 1903); *Koerber v. Patek*, 102 N.W. 40, 123 Wis. 453 (1905)).  The *Wright* court had little difficulty concluding that the plaintiffs, parents of the deceased child, had standing to bring suit.  *Id.* at 18-19.

In *Gadbury*, the court reviewed a suit for interference with a body.  133 Wash. at 134-35.  There, a defendant disputed whether a mother was responsible for the disposal of her son's body and so could not sue for mental suffering caused by withholding it.  *Id.* at 138-39.  This court disagreed, concluding that the decedent's mother had "a peculiar

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98514-6
Madsen, J., dissenting

interest in seeing that the last sad rites [were] properly given the deceased" and, thus, could maintain the action. *Id.* at 139.

The *Herzl* decision expressed the clearest articulation of who may bring tortious interference claims. This court held that the right to bury a corpse and preserve its remains is a "'legal right, which the courts will recognize and protect . . . [and] [t]hat such right, in the absence of testamentary disposition, belongs *exclusively* to the next of kin.'" 142 Wash. at 473 (emphasis added) (quoting 4 Bradford Rep. at 532). *Wright*, *Gadbury*, and *Herzl* premised the ability to bring tortious interference actions on the right to control the disposition of a body.

RCW 68.50.160 codified this common law right. 16 DEWOLF & ALLEN, *supra*, at 589. The statute provides a list for whom the right to control bodily remains vests in the absence of the decedent's directions. RCW 68.50.160(3). According to the statute, control passes from the decedent to a surviving spouse or domestic partner, surviving adult children, surviving parents, and surviving siblings of the decedent. RCW 68.50.160(3)(c)-(f). Lawmakers did not add siblings to the list until 1993, over 50 years since the provision was originally enacted. RCW 68.50.160; SUBSTITUTE H.B. 1195, 53d Leg., Reg. Sess. (Wash. 1993).

Since first recognizing the tort for interfering with a dead body in 1907, this court has, in practice, followed a theory of limited standing. *E.g.*, *Wright*, 46 Wash. at 18; *Gadbury*, 133 Wash. at 139; *Herzl*, 142 Wash. at 473. Such is the traditional approach among jurisdictions that have opined on the matter and is associated with the *Restatement*

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98514-6
Madsen, J., dissenting

*(Second) of Torts*.  *See Amaker*, 540 F.3d at 1015-16 (citing cases from Massachusetts,

Virginia, Michigan, and Georgia);[1] *see also* RESTATEMENT (SECOND) OF TORTS § 868

(AM. LAW INST. 1979).

Washington has not diverged from the traditional approach, though at least one

court has found our cases to suggest "contradictory standards."  *See Amaker*, 540 F.3d at

1017.  For example, *Wright* noted that the improper handling of a dead body that causes

"relatives *or* persons charged with [a body's] decent sepulture to naturally suffer mental

anguish" would shock the sensibilities.  46 Wash. at 20 (emphasis added).  But this

statement describes the tort itself—identifying those who may suffer emotional distress,

*not* those who have standing to bring a suit based on such distress.  *Wright* expressly

holds that "persons who are the lawful custodians of a deceased body may maintain an

action for its desecration."  46 Wash. at 18-19.  *Gadbury* reinforces this notion when it

---

[1] Numerous jurisdictions have recognized limited standing for tortious interference actions:
> Generally, the person who has the right to possess and bury the body is the only proper party to sue and recover for the interference with that right.  *Steagall v. Doctors Hospital,* [*Inc.*, 84 U.S. App. D.C. 214,] 171 F.2d 352, 353 (D.C. Cir. 1948); *Burns v. Anchorage Funeral Chapel*, 495 P.2d 70, 73 (Alaska 1972); *O'Dea v. Mitchell*, 350 Mass. 163, 213 N.E.2d 870, 872 (Mass.1966); *Dumouchelle v. Duke University*, 69 N.C.App. 471, 317 S.E.2d 100, 103 (N.C.Ct.App.1984); *Whitehair v. Highland Memory Gardens, Inc.*, 174 W.Va. 458, 327 S.E.2d 438, 443 (W.Va.1985) . . . . This right typically belongs to the surviving spouse and, if none, then passes to the next of kin in the order of relation.  *Steagall*, 171 F.2d at 353; *Burns*, 495 P.2d at 73; *Whitehair*, 327 S.E.2d at 443.

*Perry v. Saint Francis Hosp. & Med. Ctr., Inc.*, 865 F. Supp. 724, 726 (D. Kan. 1994).
Tennessee, Arizona, Florida, Maryland are in accord.  *See Crawford v. J. Avery Bryan Funeral Home, Inc.*, 253 S.W.3d 149, 159-60 (2007) (citing *Tomasits v. Cochise Memory Gardens, Inc.*, 150 Ariz. 39, 721 P.2d 1166 (Ct. App. 1986); *Andrews v. McGowan*, 739 So.2d 132 (Fla. Ct. App. 1999); *Walser v. Resthaven Mem'l Gardens, Inc.*, 98 Md. App. 371, 390-91, 633 A.2d 466 (1993)).

No. 98514-6
Madsen, J., dissenting

explained that "it has been held in many cases that those persons who by relationship have a peculiar interest in seeing that the last sad rites are properly given the deceased may maintain the action." 133 Wash. at 139.

Additionally, in *Adams*, this court remarked that the interest in a body "extends to relatives of the deceased *and* those who control the right to dispose of the body." 164 Wn.2d at 658 (emphasis added) (citing *Gadbury*, 133 Wash. at 139; RCW 68.50.160(3)). Similar to *Wright*, this statement does not expand standing to any relative who may suffer emotional distress due to the mishandling of a dead body. Instead, it recognizes that the interest in bodily remains includes those who control the right to dispose of a body, which can include relatives. Moreover, the statement relies on authorities that align with the traditional, limited standing approach. *Gadbury* identifies the common law interest in controlling the disposal of a body, which RCW 68.50.160 vests along specific lines of descent. Neither would permit a collateral relative's action for tortious interference if a closer relative—as enumerated under RCW 68.50.160(3)—survives the decedent and controls disposition of the body.[2]

---

[2] Despite *Amaker*'s suggestion that *Reid v. Pierce County*, 136 Wn.2d 195, 205-08, 961 P.2d 333 (1998), expanded standing to family members other than those with the right to dispose of a decedent's body, the case inapposite. 540 F.3d at 1017. *Reid* stated that the plaintiffs' relatives, which included the niece of one decedent, would have a claim for tortious interference with a corpse. 136 Wn.2d at 198-99. Yet *Reid* also observed that the niece was assigned her claim by her aunt, the decedent's sister. *Id*. at 198 n.1. Moreover, *Reid* concerned a right to privacy claim—not tortious interference—nor did it discuss standing and mentioned liability for interference only tangentially. *See Amaker v. King County*, 479 F. Supp. 2d 1159, 1161 (W.D. Wash. 2007).

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98514-6
Madsen, J., dissenting

The majority, on the other hand, rejects a well-accepted body of case law, spanning over 100 years, to adopt an expansive approach to standing that sets no discernable limits. Relying heavily on the notion that *Wright*, *Gadbury*, and *Herzl* did not directly concern standing, the majority easily disregards them. Majority at 4-5. This is far from sufficient, considering we do not depart from precedent lightly. *See State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016). Moreover, despite attempting to show that *Wright* does not expressly limit standing, the majority offers few affirmative reasons for why a new approach is needed. *See generally* majority at 4-7. Noting that the original quasi-property interest in a body has eroded and that the true nature of tortious interference claims is emotional damage speaks not at all to standing. *See id*. at 5-7. And bringing the tort of interference in line with other emotional-damages-based torts is a laudable goal if legal housekeeping was our primary motivation. *Cf. State v. Vangerpen*, 125 Wn.2d 782, 792, 888 P.2d 1177 (1995) ("[I]t is the province of this court to decide the issues of law.").

In its effort to "modernize" the court's approach to this claim, the majority looks to *Grimsby v. Samson*, 85 Wn.2d 52, 530 P.2d 291 (1975), to hold the tort of outrage is analogous to tortious interference. Majority at 7-8. In *Grimsby*, the defendants presented arguments that "mirror" the city of Bellingham's arguments: that expanded standing risks opening the floodgates to fraudulent claims and allowing unlimited liability for mental disturbance. *Id*. The majority reasons that because we rejected these arguments in *Grimsby*, we may similarly reject them here. *Id*. However similar the arguments may be,

7

No. 98514-6
Madsen, J., dissenting

applying analogous rationale presumes the underlying law is analogous.  That is simply

not the case.

The tort of outrage is distinct from tortious interference with bodily remains.

Outrage requires proof of intentional or reckless infliction of emotional distress, while

interference requires mental suffering derived from willful misuse of a body.  *Reid*, 136

Wn.2d at 202; *Adams*, 164 Wn.2d at 658.  And, outrage requires the plaintiff *to be*

*present* at the time of the defendant's conduct.  *Grimsby*, 85 Wn.2d at 60.  *Inexplicably*,

the majority declines to adopt any such presence requirement for interference actions.

Majority at 9 n.5.  This decision is inconsistent with the majority's reasoning: adopting

*Grimsby* as a guide suggests that we *should* also adopt a presence requirement.[3]

In any event, the *Grimsby* court rejected the potentially unlimited liability

argument based on the comments to the *Restatement (Second) of Torts*, which we have

not yet adopted for interference with bodily remains.  85 Wn.2d at 59-60; *Adams*, 164

Wn.2d at 656; RESTATEMENT (SECOND) OF TORTS § 46 (AM. LAW INST. 1965) (outrage);

RESTATEMENT (SECOND) OF TORTS § 868 (interference with a dead body).  *Grimsby* does

not provide a useful analog for rejecting the city's arguments, and even so, the majority's

adoption is internally dissonant with the case itself.

---

[3] The term "bystander" is used primarily in negligence-based emotional distress torts.  *Hegel v. McMahon*, 136 Wn.2d 122, 125-26, 960 P.2d 424 (1998) (bystander negligent infliction of emotional distress plaintiffs are restricted to those who were present at the scene of an accident). I therefore agree that the term is ill suited for application in the intentional tort of interference with a dead body.  Majority at 9 n.5; *Adams*, 164 Wn.2d at 658.

8

No. 98514-6
Madsen, J., dissenting

The majority adopts an expansive view of standing, but it cannot do so consistently with past precedent or even internally with other emotional-damages-based torts. Instead, we should adopt a resolution that accomplishes both. Considering this court's practical adherence to the traditional limited standing approach demonstrated by *Wright*, *Gadbury*, and *Herzl*, I would conclude that a claim for tortious interference with a dead body can be brought only by those with the right to control disposition of the body. That is, the persons enumerated in RCW 68.50.160(3). Pursuant to this statute, Ginn Sr.'s wife is the surviving spouse with the superior right to control disposition of his body. Doc. 14, Ex. A at 24, 30-31 (Robert Fox's deposition). Thus, Fox does not have standing under RCW 68.50.160(3).

With these considerations in mind, I respectfully dissent.

_____
Madsen, J.

_____
Johnson, J.

_____
Gordon McCloud, J.